261 So.2d 757

Lovis C. LAMMERS

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., a Corporation.

8 Div. 59.

Court of Civil Appeals of Alabama.

March 22, 1972.

Perkins, Walker & Musgrove, Florence, for appellant.

Poellnitz, Cox, Robison, McBurney & Jones, Florence, for appellee.

## ON APPLICATION FOR REHEARING

THAGARD, Presiding Judge.

Upon appellant's application for rehearing the original opinion is withdrawn and the following is substituted therefor:

This is an appeal by plaintiff in the trial court from a ruling sustaining defendant's demurrer to plaintiff's complaint and the resulting judgment of nonsuit entered by the court on plaintiff's motion.

Plaintiff sued defendant, who will hereinafter sometimes be referred to as State Farm, under the uninsured motorist provision of a personal injury and property damage liability policy issued by State Farm to her deceased husband, Coyle K. Lammers, on July 14, 1959, and subsequently renewed from year to year thereafter until the time of the alleged accident. It was alleged that her husband, Coyle K. Lammers, was the driver of the insured truck at the time of the accident in which she sustained injuries and he was killed.

The policy was made an exhibit to the complaint. The complaint contained two counts, the first charging her deceased husband with negligence in proximately causing her injuries and the second with wantonness. The uninsured motorist clause sued upon reads:

"Coverage U—Bodily Injury to Insured. To pay all sums up to $10,000.00 which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injuries sustained by the insured, caused by accident and arising out of the ownership, maintance [sic] or use of such uninsured automobile."

The complaint alleged, in effect, that because of the "household exclusion" clause of the policy she was precluded from collecting from State Farm under the personal injury liability provision of the policy, wherefore, the vehicle was an "uninsured" one and her husband an "uninsured motorist" insofar as her claim was concerned. We should mention here that no other vehicle was involved in the accident and no other person was liable to plaintiff for her injuries.

There were eight grounds of demurrer, the first seven of which said, in substance, that from the complaint it affirmatively appeared that the motor vehicle in which the plaintiff was riding at the time of the accident causing her injuries was not an "uninsured automobile" as defined in the definitions pertaining to the "uninsured motorist" feature of the policy.

We hold that all of the grounds of demurrer except four and eight were good as to both counts of the complaint.

Appellant assigned only one error, viz: "For that the Court erred in sustaining Appellee's demurrer to Appellant's complaint."

■ The questions with which we are confronted are (1) whether that part of the definition of an "uninsured automobile" reading, ". . . but the term 'uninsured automobile' shall not include; (a) an automobile owned by the named insured or any resident of the same household;" so conflicts with the statute requiring that all liability and property damage policies issued to residents of Alabama contain "uninsured motorist" coverage, as to render said definition void as to persons injured while riding in the named automobile or any other automobile owned by the named insured or by any member of his family

residing in the same household; and (2) whether the definitions in the policy of an "insured automobile" and an "uninsured automobile" are so repugnant as to create an ambiguity requiring a construction in favor of appellant.

The "Uninsured Motorist Coverage" statute, being § 74(62a) of Tit. 36 of the 1958 Recompiled Code of Alabama of 1940, reads as follows:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 74(46) of this title, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."

Appellant contends that that part of the definition of an "uninsured automobile" which excludes an automobile owned by the named insured or any resident of the same household is more restrictive than that of the statute next above quoted and therefore void and inoperative, and in support of her position cites Bowsher v. State

Farm Fire and Casualty Company, 244 Or. 549, 419 P.2d 606. The facts in the *Bowsher* case were that Bowsher, the owner of the automobile upon which appellee had issued a standard liability insurance policy which contained an "uninsured automobile" coverage clause, suffered injuries while riding as a passenger in his own automobile, which was being driven at the time by one Simpson, who had no liability insurance in his own name, but while driving Bowsher's automobile with his permission was an insured under the terms of Bowsher's policy. But the bodily-injury liability insurance was not in force as to Bowsher because a clause in the policy specifically excluded him (as the named insured) from the right to recover under the personal liability coverage of the policy.

Bowsher, contending that, because of the family exclusion clause of the personal injury liability coverage, the automobile was an "uninsured automobile" within the meaning of the "Uninsured Motorist Coverage" of the policy, sued his insurance carrier and obtained a judgment in the trial court. Upon appeal the Supreme Court of Oregon, in affirming the judgment, said:

"Whether or not an automobile is 'insured' in such cases depends upon whether or not existing insurance is applicable to compensate the particular injured person asserting coverage. If, as to the particular injured person, there is no other insurance available, and his policy contains an 'uninsured-automobile' or 'uninsured-motorist' clause, then the company writing such a policy must come in and defend on their merits claims made against the company under such coverage." (419 P.2d 608)

It is to be noted, however, that if the policy in the *Bowsher* case, supra, contained an "exclusion by reason of ownership" definition similar to the one relied upon by the insurer in this case, the same is not referred to in the opinion of the

Oregon Supreme Court. The court did say that:

> "The problem in this case arises out of the exclusions and definitions contained in Bowsher's insurance policy. One of the definitions specifically defines his described automobile as an insured automobile. Since Bowsher was injured while riding in an 'insured' automobile, the company contends, he cannot claim coverage under a policy provision expressly written to protect him against injuries caused by operators of 'uninsured' automobiles." (419 P.2d 607)

Evidently, the court based its opinion on the definition of an "insured" automobile and not on an exclusionary provision in the definition of an "uninsured" automobile, which differentiates the case from the one with which we are dealing.

More to the point is an Illinois case, decided by the Appellate Court of Illinois, Fifth District, styled Madison County Mutual Automobile Insurance Co. v. Goodpasture, 267 N.E.2d 31, cited by appellant, in which the appellate court held that the owner-insured under a personal injury liability policy containing "uninsured automobile" coverage was entitled to recover under said coverage for injuries sustained by her while riding as a passenger in her insured automobile which was being operated at the time of the accident, with her permission, by one John Wright. The "Uninsured Automobile" definition recited that, " ; . . . but the term 'uninsured automobile' shall not include: (i) an insured automobile . . ."; and an "insured automobile", as to the "uninsured automobile" coverage, was defined as "an insured automobile to which the bodily injury liability coverage of the policy applies; . . ."

Apparently, this is a case of first impression in Alabama. Neither appellant nor appellee cites an Alabama case directly in point. Appellant says in her brief that she has found no Alabama case in point and only three cases in other jurisdictions that are somewhat similar in their facts. Two of them are the *Bowsher* case, supra, and the *Goodpasture* case, supra, and the third was a Georgia case that was decided solely on the basis of the Georgia Uninsured Motorist Statute that specifically defined an uninsured motor vehicle as follows: "The term uninsured motor vehicle means a motor vehicle other than a motor vehicle owned by or furnished for the regular use of the named insured, the spouse of any such named insured . . . ."

In cases of first impression in Alabama we believe it our duty to draw upon well established principles that have been long adhered to by our Supreme Court, if they provide a solution to the problem, before going to the law of other states for guidance. Furthermore, we conclude from a review of Alabama authorities in other cases involving insurance policies generally and automobile policies in particular that certain principles have been so well established and so long adhered to in Alabama that to hold that the uninsured motorist coverage of the policy sued upon is available in this case would do violence to such well established principles.

We shall now undertake to review some of the decisions formulating and adhering to the principles to which we have referred.

From Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7, we quote:

> "It seems to be well settled that exceptions, 'explicit in terms and plain of meaning,' withdrawing a claim from the general stipulations of the policy, will be given effect. 5 Couch on Insurance, § 1165, p. 4088; Leaksville Light & Power Co. v. Georgia Cas. Co., 188 N.C. 597, 125 S.E. 123.
>
> .    .    .    .    .    .
>
> "While it is true that insurance contracts are to be liberally construed to effectuate the intention of the parties, and in cases of doubt a contract will be construed most strongly against the party

who framed it—the insurance company—yet it is the duty of the courts to construe it, not to make a contract for the parties.

"No one doubts, we take it, that in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts are without right to add anything to their contracts, or to take anything from them. 14 R.C.L. pp. 928, 929. Thus they have the right, in the absence of statutory provisions to the contrary, to write their contracts with narrow coverage, if they see proper to do so. There is no compulsion against either the assured or insurer. The assured may, or may not, as he sees proper, take the policy.

"In the case of Life & Casualty Insurance Co. v. Whitehurst, 226 Ala. 687, 148 So. 164, 165, we reaffirmed the rule declared in Life & Casualty Ins. Co. of Tennessee v. Tollison, 223 Ala. 78, 134 So. 805, viz.: 'We approve, as of course, the rule that insurance contracts may be, and often are made with very limited coverage, the small premium fixed on careful calculation of the hazard, assumed; and they should be enforced, not a new or enlarged contract made for the parties.'

"And we have repeatedly held it to be a cardinal rule; enforced everywhere, so far as we are advised, that, if the contract of insurance, in its terms, is plain, certain, and free from ambiguity, there is no room for construction, and it is imperative upon the court to enforce it as written. McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349; 13 Corpus Juris § 513, page 541; New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547." (233 Ala. 520 and 521, 173 So. 9 and 10)

The *Loveman* case, supra, was cited approvingly in Smith v. Kennesaw Life & Accident Insurance Co., 284 Ala. 12, 221 So.2d 372.

In Mooradian v. Canal Insurance Co., 272 Ala. 373, 130 So.2d 915, the facts were that the insurance company had issued to appellant an automobile liability policy on a truck which was involved in an accident which resulted in the death of one Leroy Kilpatrick, who was a passenger therein. The policy contained a clause that excluded the liability coverage from persons injured or killed while riding as a passenger in the insured automobile. The administratrix of the decedent sued Mooradian, the named insured, for the wrongful death, whereupon Mooradian filed a bill in the Equity Court of Covington County, Alabama, seeking a declaratory judgment that the insurance company was liable to defend the suit and pay such damages as might be recovered by the administratrix, subject to the limitation of the policy as to amount. Judge Murland Smith rendered a decree holding the passenger exclusion clause valid and absolving the insurance carrier of liability. The Supreme Court affirmed the decree of the trial court. Appellant grounded his argument upon the import of paragraph four under the heading "Conditions" within the policy, which read:

" 'Such insurance as afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy.' " (272 Ala. 376, 130 So.2d 917)

The court said, inter alia, as follows:

"Appellant Mooradian was issued the policy of liability insurance by appellee on July 31, 1952, and a passenger hazard

excluded endorsement was issued, signed, and expressly incorporated into the policy on July 31, 1952 at Greenville, South Carolina. This endorsement stated: 'It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the automobile'. Appellant Mooradian urges that this agreement is not binding for there was no consideration and this latter provision of exclusion, being in conflict with prior provisions of coverage in his policy should not be given effect. It is true that an alteration of the contract by subsequent agreement must be based on a new consideration. Great American Ins. Co. v. Dover, 219 Ala. 530, 122 So. 658. But such is not the status of the instant policy. The endorsement of exclusion incorporated in the policy constituted the entire contract of insurance issued by Canal Insurance Company to Mooradian for which there was consideration given. 'It seems to be well settled that exceptions, "explicit in terms and plain of meaning," withdrawing a claim from the general stipulations of the policy, will be given effect.' Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7, 8.

"Insurance companies have a right, in absence of statutory provisions to the contrary, to write their contracts with narrow coverage. There is no compulsion on either the insured or insurer, and the insured may or may not in his own discretion take the policy. Loveman, Joseph & Loeb, supra. There was no ambiguity in the terms of the 'exclusion clause', there was no need of construction, and it was the duty of the court to enforce it as written. The court rightly held that there was no coverage or liability under the policy for the deceased, Kilpatrick, he being a passenger in the insured vehicle." (272 Ala. 377, 130 So. 2d 917)

In State Farm Mutual Automobile Insurance Co. v. Hubbard, 272 Ala. 181, 129 So. 2d 669, the appellee's wife, Mrs. Hubbard, sued her husband for damages sustained by her while her husband was racing his wheels in trying to get his car out of a mud hole and she was standing nearby. Her injuries were caused by having been hit on the leg by a board which the husband had placed under the wheels for traction. State Farm declined to defend, and a judgment by default in the amount of $25,000 was rendered in favor of Mrs. Hubbard. Thereafter, pursuant to 1940 Alabama Code, Tit. 28, § 12, as amended by Act No. 283, Acts 1953, Vol. I, p. 350, Mrs. Hubbard filed a bill in the Circuit Court of Tuscaloosa County, in Equity, against Mr. Hubbard and State Farm for the purpose of collecting her judgment. The trial court rendered a decree in her favor. The Supreme Court reversed and rendered, saying, inter alia, as follows:

"Let us see just what it is that State Farm conceded or admitted when it filed the SR–21. By the very terms of the SR–21, it admitted that the policy 'conforms with requirements of the Motor Vehicle Safety-Responsibility Act.' But there is nothing in the Act providing for or requiring a policy in connection with the security provisions other than 'an automobile liability policy with respect to the motor vehicle involved in such accident.' And what is such a policy? It seems to us that it means simply an automobile liability policy valid under the laws of Alabama and containing the minimum prescribed limits of liability. There appears to be no disagreement that the policy issued by State Farm (containing the household exclusion provision) is valid in this state. So, when State Farm filed the SR–21, can it be said it intended to certify or admit that the policy did not contain such lawful exclusion provision? We do not think so. There can be no waiver without the intentional relinquishment of a known right. Bell v. Birmingham Broadcasting Co., 263 Ala. 355, 357, 82 So.2d 345;

Isom v. Johnson, 205 Ala. 157, 159, 87 So. 543; 56 Am.Jur., Waiver, § 2, p. 102, § 15, p. 115; 45 C.J.S. Insurance § 673, pp. 612–613. Clearly, it seems to us, there is no showing of an intentional relinquishment by State Farm of its right to rely on the household exclusion provision of its policy. The policy being a valid 'automobile liability policy', and the Act providing for such policy, we are clear to the conclusion that, under the circumstances of this case, there was no waiver of the household exclusion provision.

"It might well be that the provisions of Act No. 704 making the security provisions of the Act inapplicable if the owner had in effect at the time of an accident 'an automobile liability policy with respect to the motor vehicle involved in such accident,' should be changed to provide more protection under such a policy than is presently the case. That, however, is a matter which is addressable to the legislature. For us to hold it was intended by the present Act to afford such additional protection would be to legislate by judicial decree." (272 Ala. 187, 129 So.2d 675)

We take from Holloway v. State Farm Mutual Automobile Insurance Co., 275 Ala. 41, 151 So.2d 774, the following quotation from Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108, quoted approvingly by our Supreme Court:

"'Here, the word "family" is used in a clause restricting the liability of an indemnity insurer in an automobile policy. Its obvious purpose is to exempt the insurer from liability to one who would naturally and inevitably be partial to another because of the close filial ties which exist between members of the same family circle living in the same household. The same reasons exist for restricting its liability to those not members of such family circle whether the injured party is the head of the household, a child or spouse of the head, or

simply a member of it. Under these circumstances, the words used should be given that meaning which they ordinarily would have in order to effectuate the obvious purpose intended by the exclusionary clause. The trial court correctly held that plaintiff was within the excluded class.'" (275 Ala. 44, 151 So.2d 776)

In Blow v. State Farm Mutual Automobile Ins. Co., 284 Ala. 687, 228 So.2d 4, it was said:

"That which was said by the Supreme Court of South Carolina in Hunter v. Southern Farm Bureau Casualty Insurance Co., 241 S.C. 446, 129 S.E.2d 59, a case involving the same type of exclusionary clause as is presented in the case under review, is pertinent to our decision:

"'* * * The purposes of the exclusion clause is to exempt the insurer from liability to those persons whom the insured, on account of close family ties, would be apt to be partial in case of injury. Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108; Cartier v. Cartier et al., 84 N.H. 526, 153 A. 6.

"'In the light of the clear purposes intended to be accomplished by the exclusionary clause in question, we think that the term "family," as here used, includes "such persons as habitually reside under one roof and form one domestic circle." Johnson v. State Farm Mutual Automobile Ins. Co., 8 Cir., 252 F.2d 158. If the injured person is a member of such family circle, liability of the insurer is excluded.' Id., at 61." (284 Ala. 692, 228 So.2d 8)

One of the most recent Alabama cases upholding an exclusionary clause is that of Alabama Farm Bureau Mutual Casualty Ins. Co. v. Preston, 287 Ala. 493, 253 So.2d 4. The facts were that Preston's married daughter and her children were living in the home of her parents while her

**44**

husband was doing military duty overseas. She brought with her a Dodge automobile owned jointly by herself and her husband. Her father owned two automobiles upon which he had in force two identical liability policies issued by appellant. While driving his daughter's Dodge he had a collision with another automobile and was sued for the ensuing damages. Apparently, there was no liability insurance on the Dodge.

The policies on Preston's automobiles contained non-owned automobile coverage under Insuring Agreement II, which contained the following exclusion:

"'Insuring Agreement II does not apply: 1. to a non-owned automobile * * * (b) hired by or furnished or available to the named insured or relative for frequent or regular use, or * * *'" (253 So.2d 5)

The policy defined a relative as "a relative of the same household." In declaratory proceedings the trial court found that appellant was obligated under either of two identical policies to defend Preston and to pay any judgment arising from said suit within the limits of either policy. The Supreme Court reversed and remanded with instructions. From Justice Harwood's opinion, speaking for the court, and Justice Maddox's opinion, concurring specially, we glean the following statements:

"Insurance contracts, like other contracts, are not to be construed so technically as to defeat the intention of the parties, but are to be given a rational and practical construction. We are not at liberty to make a new contract for the parties by a tortured construction. . .

"Premiums on insurance contracts are fixed upon a careful calculation of the hazards assumed, and the scope of coverage is directly related to breadth, or limitation, of the coverage provided. . . . Courts have considered that the obvious purpose in excluding from coverage an automobile owned or available to one residing in the insured's household is to avoid overloading a single policy by a multiple coverage of several vehicles owned by members of the same family. . . . While an insured is covered as to permissive use of non-owned automobiles belonging to other persons, such use is regarded by insurers as casual and episodic and not of sufficient seriousness as to be excluded. . . ." [Harwood] (253 So.2d 6)

"I cannot say that this giving of coverage and then taking it away creates a pitfall or ambiguity which would allow us to construe the policy provisions liberally in favor of the insured. Preston apparently was not attempting to get coverage on several cars by insuring only one. He had two policies on the two cars he owned. His use of the Magee car was very infrequent.

"The result reached here appears to be hard, but the provisions of the policy are not ambiguous and we are not at liberty to change them. . . ." [Maddox] (253 So.2d 8)

■ We think the quotations from the above decisions make it clear that it is the settled policy in Alabama that exclusionary definitions and clauses in insurance contracts shall be enforced by the courts of this state so long as their meaning is clear and they do not conflict with statutory law or public policy.

We do not overlook that appellant contends that the exclusionary definition of the "uninsured automobile" coverage of this policy restricts the operation of the "Uninsured Motorist Coverage" statute. § 74(62a) of Tit. 36 of the 1958 Recompiled Code of Alabama of 1940, supra.

It appears to us that the "Uninsured Motorist Coverage" statute neither authorizes nor forbids the exclusion contained in the "uninsured automobile" coverage of the policy sued upon, nor does it undertake to define "uninsured motor vehicles." We hold that there is no merit in appellant's contention that that part of the defi-

nition of an "uninsured automobile" which excludes the truck in which plaintiff was injured from "uninsured motorist" coverage as to this plaintiff is not more restrictive than the State "Uninsured Motorist Coverage" statute.

■ The Supreme Court of this state has consistently upheld the "household exclusion" clause of liability policies, thereby establishing a judicial policy in this state that insurance companies may by appropriate exclusions and exclusionary definitions protect themselves from friendly family lawsuits. What availeth it to an insurance company to escape liability under the "household exclusion" clause and then finds itself caught in the net of the "uninsured motorist" clause? If the legislature, knowing the judicial policy of the courts of this state with reference to "household exclusion" clauses, had seen fit to make "uninsured motorist" coverage nullify, in practical effect, such "household exclusion" clauses, it surely would have done so when it adopted the "Uninsured Motorist Coverage" statute, supra.

It is to be noted that the Alabama "Uninsured Motorist Coverage" statute, supra, contains this provision, "under provisions approved by the commissioner of insurance." The record and the briefs of the parties are silent as to whether the provisions of this policy were approved by the commissioner of insurance. If the exclusionary definition about which we are writing had not been approved by the commissioner of insurance, surely appellant would have made the point in his complaint and brief. We do not say the point is decisive but we think it is to be taken into consideration in considering the validity of the definition in question.

■ Appellant stoutly contends that there are conflicting definitions in the "uninsured automobile" coverage of the policy and that the conflict creates an ambiguity that should be resolved in favor of appellant. If there is such a conflict resulting in an ambiguity it should be resolved as appellant contends.

The "uninsured automobile" coverage contains definitions of an "Uninsured Automobile" and an "Insured Automobile" as they apply to that particular coverage. An "Insured Automobile" is defined as "(1) the motor vehicle described in the declarations and also includes a temporary substitute automobile and a newly acquired automobile, . . . ; (2) an automobile not owned by the named insured or any resident of the same household . . . ., which such automobile is being operated by the named insured; . . . ."

We think the purpose of this definition was to enlarge ·the coverage so as to include a temporary substitute automobile and a newly acquired automobile, and also to extend it as to the named insured, while operating a non-owned automobile; but for which it would not have been necessary to define an "Insured Automobile." As to the "uninsured motorist" coverage, subject to the several exclusions contained in the "Uninsured Automobile" definitions, all automobiles falling within the classes named were "Insured Automobiles."

An "Uninsured Automobile" was defined as "(1) an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance policy . . . applicable . . .; or (2) hit-and-run automobile as defined; but the term 'uninsured automobile' shall not include: (a) an automobile owned by the named insured or any resident of the same household; (b) . . .; (c) . . .; (d) . . . ." Construing the definitions of an "Insured Automobile" and an "Uninsured Automobile" together, as we are required to do if they may be reconciled, we conclude that the definitions of an "Insured Automobile" contained all of the classes of ownership of automobiles in which the persons included in the definition of "The unqualified word 'Insured' " were protected under the "uninsured motorist" coverage of the policy, subject to the exclusions contained in the definition of an "Uninsured Automobile", one of the exclusions being "(a) an automobile owned by the named insured or any resident of the same house-

hold." Under the definitions of an "Insured Automobile", "the policy giveth", and under the exclusions of the definition of an "Uninsured Automobile", "the policy taketh away." We are clear to the conclusion that if appellant's injuries had been the proximate result of the negligence of the driver of a motor vehicle not owned by the named insured or a family member without liability insurance who negligently caused his vehicle to collide with the insured vehicle in which appellant was riding she would have been insured under the "uninsured motorist" coverage of her husband's policy; but under the exclusionary definition of an "Uninsured Automobile" the "uninsured motorist" coverage was not available to her. We hold that the trial court did not err in sustaining appellee's demurrer to appellant's complaint.

We hold that the court committed no error in sustaining the demurrers. The judgment appealed from is affirmed.

The foregoing opinion substituted for original opinion. Application for rehearing overruled.