282 So.2d 295

Gwen **HIGGINS**, a minor

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

Civ. 57.

Court of Civil Appeals of Alabama.

Feb. 7, 1973.

Rehearing Denied March 21, 1973.

Edgar M. Elliott, III, and Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellee.

M. Clay Alspaugh, Birmingham, for appellant.

WRIGHT, Presiding Judge.

Plaintiff-appellant, a minor, brought suit by next friend against Nationwide Mutual Insurance Company as an insured under the Uninsured Motorist provision of her father's insurance policy. Plaintiff was injured in a one vehicle accident while a passenger on a school bus belonging to Jefferson County, Alabama. Neither the county nor the driver were covered by liability insurance.

In answer to the complaint, appellee-Nationwide filed 4 pleas. Plea 1 was the general issue. Plea 2 alleged failure of notice of the accident as soon as practicable as required by the terms of the policy. It is set out that the accident occurred on October 20, 1969 and first notice to defendant was July 8, 1971. Plea 3 alleged lack of coverage because of exclusion by definition contained in the policy. The policy excluding from uninsured automobile—"an automobile owned by the United States, Canada, a State, a political subdivision or agency of any of the foregoing." Plea 4 is not involved in the issues raised by this appeal.

Demurrer of plaintiff to Pleas 1 through 3 was overruled. Plaintiff's motion for nonsuit due to adverse ruling on the demurrer to the pleas was granted by the trial court. Nonsuit was duly entered in accord with the motion and appeal was taken.

Appellant in brief argues two assignments of error. The first argued assignment of error contends that the court was in error in overruling demurrer to Plea 2.

Appellant's propositions of law and argument in brief are directed to the legal definitions and factual requirements of "Notice as soon as practicable." The law cited is assumed to be correct. However, the argument of appellant is not directed to the legal sufficiency of the plea. The matters raised would only be appropriate for argument after issue was joined on the plea and evidence presented thereon. The question of fact as to whether notice was given as soon as practicable could not have been presented by demurrer to the defensive plea. Therefore, since the legal sufficiency of the plea is not presented by argument in brief, nor in fact, was it raised by the grounds of demurrer, we find the trial court correctly overruled demurrer to Plea 2.

Appellant next argued assignment of error is directed at the overruling of the demurrer to Plea 3.

As previously stated, Plea 3 set up an exclusion by definition in the policy as to an automobile owned by a political subdivision of the State, which would include a school bus owned by Jefferson County.

Ground 4 of appellant's demurrer charged that such exclusion in the policy is contrary to public policy and void.

In order to discuss the accusation of appellant that the exclusion of governmental vehicles from coverage as an uninsured automobile in uninsured motorist policy is contrary to public policy, we must first seek a definition of "public policy."

Our research indicates that the term "public policy" of a State is nothing more or less than the law of the State, as found in its constitution and statutes and when they have not directly spoken, then in the decisions of the courts and in the regular practice of government officials. Perry v. U. S. School Furniture Co., 232 Ill. 101, 83 N.E. 444. "Public Policy" is not determined by the varying opinions of laymen, lawyers or judges as to the demands or interests of the public. Groome

v. Freyn Engineering Co., 374 Ill. 113, 28 N.E.2d 274, 279; Nickolson v. Good Samaritan Hospital, 145 Fla. 360, 199 So. 344, 347.

When the legislature of a state has acted on a subject within constitutional authority, public policy is what the statute enacted says or indicates. Thus a constitutional statute cannot be contrary to public policy—it is public policy. When such policy, on a particular subject, has been declared and limited in a statute by plain, peremptory language, the courts have no authority to say that the legislature should have made it, or intended to make it of wider application.

With the above definition and limitation of the term "Public Policy" before us, we now examine the matter here involved.

The question here presented of whether exclusion of government vehicles from uninsured motorist policy is contrary to public policy has not previously been before the appellate courts of this State. We have been cited to only two other jurisdictions which have considered this question. The two cases arose in different states, were decided in relation to different statutes, and reached opposite results, though the last decided discussed the decision in the first.

The first case decided is that of Jones v. Southern Farm Bureau Casualty Co., 251 S.C. 446, 163 S.E.2d 306. The South Carolina Uninsured Motorist statute is almost identical with that of Alabama, except that it contains specific definitions of the term "Uninsured Motor Vehicles." Alabama's statute does not define "Uninsured Motor Vehicles."

The South Carolina statute has one other feature identical with that of Alabama. That is, they were each enacted by the respective legislatures subsequent to enactment of the Motor Vehicle Safety Responsibility Act.

The South Carolina Motor Vehicle Safety Responsibility Act was enacted by the legislature in 1952. It contained a provision that the Act did not apply to motor vehicles owned by the United States, the State or political subdivisions thereof, including municipalities. The Uninsured Motorist Act was enacted by the South Carolina legislature in 1959. Both Acts were codified in the 1962 South Carolina Code in one chapter designated as the Motor Vehicle Safety Responsibility Act. Upon codification in 1962, there remained as a section therein the original provision excluding from the application of the chapter motor vehicles owned by governments, Federal, State and municipal.

The South Carolina Supreme Court, with a strong dissent, held that as the Uninsured Motorist Act had been codified as a section of the chapter entitled Motor Vehicle Safety Responsibility Act, the section therein excluding application of the provision of the chapter to government-owned vehicles applied to the Uninsured Motorist Act, though that Act did not contain such exclusion and was enacted seven years later.

The second decision on the question involved is that of Vaught v. State Farm Fire & Casualty Co., 413 F.2d 539. That case was decided by the United States Court of Appeals, Eighth Circuit, interpreting the validity of a policy provision excluding government-owned vehicles from coverage as uninsured motorist under the Uninsured Motorist Act of Arkansas. The decision of the Court was that to allow such exclusion would be contrary to the public policy of Arkansas as declared by the Arkansas Uninsured Motorist Act.

The court in *Vaught* considered *Jones*, supra, pointing out that the case had been decided on the "narrow grounds that the act specifically permitted the exclusion," because of the codification of the Uninsured Motorist Act as a provision of the Motor Vehicle Safety Responsibility Act containing the exclusion as herein previously discussed. *Vaught* found that such narrow grounds did not exist in Arkansas

as the two acts were not codified in one chapter, though the Arkansas Motor Vehicle Safety Responsibility Act did contain the exclusion of applicability to government-owned vehicles as did that of South Carolina.

The appellant's argument in *Vaught* that though not codified together, the Uninsured Motorist Act referred to the Motor Vehicle Safety Responsibility Act for the purpose of prescribing minimum coverage, and thus the latter act should be looked to in determining legislative intent as to exclusions of coverage was rejected. In rejecting this argument the court said: "The short answer to this contention is that if the legislature had so intended, it could have been as explicit with respect to the one as it was with the other."

With these two decisions applying the law of two other states to the question before us, we now proceed to our decision.

■ Appellant contends for the validity of the exclusion in its policy upon two fronts. It argues that the decision in *Jones,* supra, applies in Alabama because as in South Carolina, Alabama's Uninsured Motorist Act as codified as a provision of the subdivision 4 of Chapter 2, Title 36, entitled Motor Vehicle Safety Responsibility Act and the latter Act specifically excludes government-owned vehicles from application to the provisions of that subdivision. Thus the intent of allowing such exclusion from the Uninsured Motorist Act is established as was the case in South Carolina.

We cannot accept this argument for very evident reasons. The present Motor Vehicle Safety Responsibility Act was enacted by the Alabama Legislature in 1951 and became effective January 1, 1952. Fourteen years later, in 1965, the legislature enacted the Uninsured Motorist Act, and made it effective January 1, 1966. Both Acts were subsequent to the last official codification of Alabama statutes in 1940. The Uninsured Motorist Act was not enacted as an amendment to the Motor Vehicle Safety Responsibility Act. As in the

Arkansas Act, the Alabama Uninsured Motorist Act referred to the Safety Responsibility Act only to designate the same minimum amount for policy coverage. Both Acts were placed by Michie Company in the same chapter in the so-called 1940 Code of Alabama as recompiled in 1958. This recompilation has never been approved as the official Code of Alabama by the legislature as provided in Article 4, § 85 of the Constitution.

The inclusion of the Uninsured Motorist Act as a provision of the Motor Vehicle Safety Responsibility Act is the work of Michie Company, not the legislature. Therefore, in determining the intent of the legislature in enactment of the Uninsured Motorist Act we are authorized to consider it only as to its own terms. The "narrow grounds" upon which the Supreme Court of South Carolina decided the *Jones* case do not exist in Alabama, and we do not consider *Jones* precedent here.

Let us now consider *Vaught.* We have rejected the principle of *Jones* as did the Court of Appeals in *Vaught.* The Arkansas statute establishing uninsured motorist coverage, is for all purposes here considered, identical with that of Alabama. The Alabama statute requires that the automobile liability insurer shall provide, if requested by the insured, coverage in its policy in the same limits for bodily injury or death as is required by the Motor Vehicle Safety Responsibility Act for the protection of persons insured thereunder, who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for bodily injury, sickness, disease or death resulting therefrom.

■ As stated in *Vaught,* it appears to us from the plain and unambiguous wording of the statute, that it is the basic purpose of the Uninsured Motorist Act, and thus the public policy of the State as to this matter, that Alabama citizens purchasing automobile liability insurance be able to obtain for an additional premium the same protection against injury or death at

the hands of an uninsured motorist as they would have had if that motorist had obtained for himself the minimum liability coverage required by the Safety Responsibility Act. If the legislature had intended to except government-owned vehicles from designation as an uninsured motor vehicle under the umbrella of protection required to be given, it could have so stated. It is clear that the purpose of the Uninsured Motorist Act is for the protection of the policy holder. It was said in Safeco Insurance Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736, "The key words in our statute are 'coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.'" It was stated in Gulf American Fire and Casualty Co. v. Gowan, 283 Ala. 480, 218 So.2d 688, "Uninsured motorist coverage is intended to provide financial recompense to innocent persons who are injured and to dependents of those who are killed because of the wrongful conduct of uninsured motorists." We consider these statements of the Supreme Court of Alabama, and the clear wording of the statute, to plainly enunciate and establish public policy to be that uninsured motorist coverage shall provide the required limits of protection as against the acts of owners or operators of all uninsured motor vehicles resulting in injury or death for which they are legally liable in damages.

█ Though not raised in brief by either party, it appears that there was a clear basis for excluding government-owned vehicles from the Safety Responsibility Act. That Act was for public protection against the financially irresponsible using the highways. American Southern Insurance Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783. It provided for specific penalties for those who were found in violation. Such penalties were either legally impossible to impose or impractical to impose against the various designated governmental entities. The Act failed to require pre-accident financial responsibility, and it is only after failure to respond financially to claims for injuries that the penalties are imposed.

█ On the other hand, the Uninsured Motorist Act allows a liability policy holder, one who has made himself financially responsible, to protect himself at his own expense against those who have failed to comply with the purpose of the Safety Responsibility Act and who are financially irresponsible. As we see it, the purpose of the Uninsured Motorist Act was to provide a method for an insured motorist to protect himself against the deficiences of the Safety Responsibility Act as such deficiencies became evident after fourteen years. We do not see the apparent reason for the specific exclusion of government-owned vehicles in the Safety Responsibility Act, present in the Uninsured Motorist Act, nor do we see any basis for construing them in para materia. The legislature did not so indicate.

The matter of governmental immunity from establishment of legal liability nor the effect upon the insurer's right of subrogation if the exclusion is invalidated was not presented in brief. These matters were presented and disposed of by the court in *Vaught*. Had they been presented here we would be inclined to follow the reasoning in *Vaught,* but such matters not being presented are not decided here.

Appellant's second front of attack was to cite to us our case of Lammers v. State Farm Mutual Automobile Insurance Co., 48 Ala.App. 36, 261 So.2d 757 [cert. denied, 288 Ala. 745, 261 So.2d 766]. In that case, the opinion of the court being written by our former distinguished Presiding Judge, T. Werth Thagard, plaintiff sued State Farm under the uninsured motorist coverage of a liability policy issued by State Farm to plaintiff's deceased husband. The husband was the driver of the insured truck at the time of the one vehicle accident in which plaintiff was injured and her husband killed. The complaint alleged

that because of the "household exclusion" clause in the liability provisions of the policy, her husband's vehicle was "uninsured" and her husband an "uninsured motorist" insofar as her claim was concerned, and therefore, she, being an insured under the provisions of the liability policy, could recover for her injuries under the uninsured motorist provisions. Defendant demurred on the ground that the "uninsured" policy provisions by definition of an uninsured automobile also excluded from such coverage, an automobile owned by the named insured or any resident of the same household. Upon sustaining of defendant's demurrer, plaintiff took nonsuit and appealed.

This Court upheld the ruling of the trial court and determined that a "household exclusion" clause in the uninsured motorist provision was permissible and not in conflict with the Uninsured Motorist Act. We do not here overrule our decision in *Lammers*. We consider the basis for that decision on the situation there involved to be distinguishable from that at hand. We do not consider *Lammers* to approve any other exclusion by definition from the uninsured provisions of a policy other than that therein involved.

We quote from the opinion in *Lammers*:

"The Supreme Court of this state has consistently upheld the 'household exclusion' clause of liability policies, thereby establishing a judicial policy in this state that insurance companies may by appropriate exclusions and exclusionary definitions protect themselves from friendly family lawsuits. What availeth it to an insurance company to escape liability under the 'household exclusion' clause and then finds itself caught in the net of the 'uninsured motorist' clause? . . .

In conclusion and summary, it is our opinion that to allow exclusions from the uninsured motorist provisions of a liability policy by the insurer of a motor vehicle because it is owned by a government or a specified subdivision thereof, would thwart the basic purpose of the Uninsured Motorist Act as hereinbefore stated.

The trial court erred in overruling demurrer to defendant's Plea 3, and for such error is hereby reversed and the case is remanded.

Reversed and remanded.

BRADLEY and HOLMES, JJ., concur.