This is an appeal from a declaratory judgment determining the rights and obligations of Alabama Farm Bureau Mutual Casualty Insurance Company, Inc. (hereinafter Farm Bureau) under the uninsured motorist provisions of its automobile insurance policy issued to Mrs. Louise Mitchell (hereinafter Mrs. Mitchell or "the insured") now deceased.
Donald Ray Brown (hereinafter Brown) entered a guilty plea in the Circuit Court of Lee County for the murder in the first degree of Mrs. Mitchell and was sentenced to life imprisonment. The murder occurred on or about October 13, 1976. The automobile insurance policy insuring a 1972 Chevrolet Malibu owned by Mrs. Mitchell was in effect at the time of the murder.
According to the deposition of Brown, the facts relating to the murder of Mrs. Mitchell are as follows: Brown was employed by Mrs. Mitchell to cut her lawn, trim hedges, and do other odd jobs. He lived near her residence with his parents and had known Mrs. Mitchell about a year. On the day of the murder, Brown went to see Mrs. Mitchell. He and Mrs. Mitchell began to "tussle." Brown threw Mrs. Mitchell on the floor, straddled her, and hit her with his fists. He bumped her head on the floor a number of times and took a towel and tried to choke her with it. Mrs. Mitchell became unconscious or semi-conscious, at which time Brown took Mrs. Mitchell's car keys out of her purse, drove her car around to the back door, took a blanket and wrapped it around her, and placed Mrs. Mitchell in the trunk of her car. Brown said it seemed Mrs. Mitchell was making faint groaning noises when he put her in the trunk. He thought she was dying. Brown drove the car all day; he then parked the car behind an old abandoned house and walked home. The car remained there all night with Mrs. Mitchell in the trunk. Brown testified he looked in the trunk on one occasion after he thought he heard bumping noises while he was driving around. He said Mrs. Mitchell did not move and he assumed she was dead. Brown touched her and said she felt damp cold. In Brown's best judgment, two hours had elapsed between the time he put Mrs. Mitchell in the trunk and the time he looked in on her. Brown drove the car through rural areas of the county the next day and left the car in a field. He looked in on Mrs. Mitchell again and said he was sure she was dead. He closed the trunk and left.
Brown testified he swished the car around on some of the dirt roads. He said he did not intend to cause Mrs. Mitchell harm by driving that way. When Brown abandoned the car, the gas tank was on *Page 1131 
"E". He could not remember whether he left the car running when he abandoned it. He said he might have. He also said he was not trying to cause Mrs. Mitchell's death by driving the car. Brown said he put Mrs. Mitchell in the trunk so he could find a place to dispose of her. He testified he did not want her riding in the front with him as someone might have seen her.
The executor of the estate of Mrs. Mitchell filed a wrongful death action against Brown. The complaint as amended avers Brown wantonly operated the automobile.
 As a result of the . . . wanton misconduct . . . Louise C. Mitchell, deceased, suffered from lack of food, lack of water, and lack of oxygen from which combined causes she died. Plaintiff avers that defendant wantonly operated the automobile . . . in such a fashion as to torment the said Louise C. Mitchell, deceased, during her hours of agony and such a fashion as to hasten her death.
Farm Bureau was notified by letter of the wrongful death suit against Brown. Farm Bureau filed an action for declaratory judgment against both the estate of Mrs. Mitchell and Brown seeking to ascertain its duty and obligation under the uninsured motorist provisions of its policy issued to Mrs. Mitchell in regard to the pending wrongful death action against Brown. It prayed the circuit court declare Farm Bureau was not obligated to defend Brown in the wrongful death suit and also was not obligated to pay damages which the executor of the estate might obtain against Brown. Furthermore, Farm Bureau asked the circuit court to declare the insured automobile was not an "uninsured motor vehicle" within the meaning of the policy nor within the meaning of the Alabama Uninsured Motorist Statute, Code of Alabama 1975, § 32-7-23; that Brown was not an uninsured motorist within the meaning of the policy nor within the meaning of the Alabama Uninsured Motorist Statute; and any other proper relief.
The circuit court ordered, in pertinent part, the following: (1) Brown was not entitled to protection of the liability insurance provision because he was not operating the vehicle as an agent, servant or employee, or with express or implied permission. Brown was not a named insured under any policy applying to the automobile. Farm Bureau was not obligated to defend Brown under the liability portion of the policy; (2) on the occasion in question, the automobile driven by Brown was an "uninsured vehicle" within the meaning of the language in the policy. The provision of the policy "that an uninsured automobile shall not include `(ii) an automobile owned by the Named Insured or by any resident of said household,' is invalid as applied to the facts in this case;" (3) Farm Bureau was liable to pay damages under the "uninsured motorist" provisions of the policy if a judgment is rendered against Brown for the death of Mrs. Mitchell, arising out of the use or operation of the automobile.
The issues to be decided on appeal are: (1) whether the provision of the policy "that an uninsured automobile shall not include `(ii) an automobile owned by the Named Insured or by any resident of said household,'" conflicts with the Alabama Uninsured Motorist law, i.e., § 32-7-23, Code of Alabama 1975, and is thereby void and unenforceable; (2) whether this court may decide if Mrs. Mitchell's death arose out of the "use" of the automobile in question; (3) whether there can be recovery under the uninsured motorist provisions of an automobile insurance policy where the death of the insured results from an intentional act.
Code of Alabama 1975, § 32-7-23 (uninsured motorist coverage) provides in part as follows:
 No automobile liability . . . policy . . . shall be delivered or issued . . . in this state . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . including death. . . .
The pertinent provisions of the policy read as follows: *Page 1132 
 The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages except punitive damages (other than death) from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile provided for the purposes of this coverage. . . . [Emphasis added.]
Under that part of the policy entitled "Definitions — Insuring Agreement III," it reads in part:
(b) Insured Automobile.
The term "insured automobile" means an automobile:
 (1) which is owned by the Named Insured and described in the declarations of the policy, . . .
. . . . .
 but the term "insured automobile" shall not include:
. . . . .
 (ii) under subparagraphs (1) and (2) above . . . an automobile unless being used by or with the express permission of such Named Insured or such spouse; or
. . . . .
(c) Uninsured Automobile.
. . . . .
 but the term "uninsured automobile" shall not include:
. . . . .
 (ii) an automobile owned by the Named Insured or by any resident of the same household;
Farm Bureau contends the exclusion involved in the definition of "uninsured automobile" (c)(ii) above and its relationship to uninsured motorist coverage has been specifically approved byLammers v. State Farm Mutual Automobile Insurance Company,48 Ala. App. 36, 261 So.2d 757, cert. den. 288 Ala. 745,261 So.2d 766 (1972). On the other hand, the executor of Mrs. Mitchell's estate contends Lammers, supra, has been so eroded by Higginsv. Nationwide Mutual Insurance Co., 50 Ala. App. 691,282 So.2d 295, aff'd 291 Ala. 462, 282 So.2d 301 (1973), and State FarmAutomobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95
(1974) that it no longer has any validity.
Lammers involved a suit by the wife of a named insured (husband) against an insurer under the uninsured motorist provisions of an automobile insurance policy. The wife sustained injuries as the result of an accident involving an insured truck driven by her husband. The truck was the only vehicle which was involved in the accident. The wife's complaint alleged that because of the "household exclusion" clause of the policy she could not recover under the liability portion of the policy; therefore the vehicle was "uninsured" and her husband was an "uninsured motorist" insofar as her claim was concerned. An "uninsured automobile" was defined in the "uninsured motorist" provisions of the policy as not including an automobile owned by the named insured or any resident of the same household. The issue was whether this exclusion conflicted with Alabama's Uninsured Motorist Coverage law so as to be void as to persons injured while riding in the named automobile or any other automobile owned by the named insured or by any member of his family residing in the same household. This court upheld the exclusion by stating:
 The Supreme Court of this state has consistently upheld the "household exclusion" clause of liability policies, thereby establishing a judicial policy in this state that insurance companies may by appropriate exclusions and exclusionary definitions protect themselves from friendly family lawsuits. . . . If the legislature, knowing the judicial policy of the courts of this state with reference to "household exclusion" clauses, had seen fit to make "uninsured motorist" coverage nullify, in practical effect, such "household exclusion" clauses, it surely would have done so when it adopted the "Uninsured Motorist Coverage" statute, supra. *Page 1133 
This court further reasoned that the Uninsured Motorist Coverage statute neither authorizes nor forbids the exclusionsued upon, nor does it define "uninsured motor vehicles;" therefore, no merit was found in the wife's contention that the exclusion was more restrictive than the statute. The supreme court denied certiorari without comment.
In a later case, Higgins, supra, this court held an exclusion of an automobile owned by a government or a specified subdivision thereof from uninsured motorist provisions contrary to the basic purpose of the Uninsured Motorist law. The basic purpose of the law as enunciated by this court is "that Alabama citizens purchasing automobile liability insurance be able to obtain for an additional premium the same protection against injury or death at the hands of an uninsured motorist as they would have had if that motorist had obtained for himself the minimum liability coverage required by the Safety Responsibility Act." The reasoning behind the decision was that "[i]f the legislature had intended to except government-owned vehicles from designation as an uninsured motor vehicle . . . it could have so stated." We then said that we do not overruleLammers because we considered the situation in Lammers to be distinguishable from that in Higgins and that Lammers approved only the household exclusion.
Certiorari was granted by the supreme court in Higgins and in affirming our decision the supreme court said:
 The purpose of Act No. 866 [Acts of Alabama, 1965 Regular Session, Vol. II, p. 1614] is to provide coverage "for the protection of persons insured thereunder" against injury, including death, caused by the wrongful act of an uninsured motorist. . . . [T]he fact remains that the Legislature did not provide this exclusion in the Act. It might have undertaken to do so, had it desired, . . . but not having done so, it is mandatory that Act No. 866, the governing law be read into the policy contract as it exists. . . .
. . . . .
 . . . Rather the question is whether conditions may be imposed in a policy which conditions restrict the uninsured motorist coverage prescribed by law.
 We think that in the absence of any language in the act authorizing the exclusion, no exclusion of governmentally owned motor vehicles may be created in the policy. An attempt to include such in the policy provisions conflicts with the mandate of the act. . . .
 Nationwide, the petitioner, argues that since Act No. 866 does not define an uninsured motorist, the contracting parties may define its meaning so long as such definition does not conflict with public policy and the provisions of the act. . . .
 . . . We have said that the words of the act control, so the question arises whether the coverage in the policy is narrower or more restrictive than that called for in the act. It is obvious to us that the definition, that an uninsured automobile shall not include an automobile owned by the government or a subdivision thereof, narrows and restricts the general meaning and definition of an uninsured automobile. . . . The exclusion in the policy is more restrictive than the act and is therefore void.
 Nationwide argues there arises a conflict between the holding in the opinion of the Court of Civil Appeals in this case and its decision in Lammers v. State Farm Mutual Automobile Insurance Co., 48 Ala. App. 36, 261 So.2d 757, wherein certiorari was denied by this court. . . The argument that Lammers is contrary to the holding of that court in this case is not convincing because we did not necessarily approve Lammers by denying certiorari.
 Being of the opinion that those parts of contracts of insurance which infringe upon or attempt to restrict the uninsured motorist coverage are contrary to the Legislative Act, . . . we hold that the clause here in question attempting to exclude governmentally owned vehicles is void and unenforceable. [Emphasis added.] *Page 1134 
Subsequent to its decision in Higgins, the supreme court, inReaves, was faced with another exclusion in the uninsured motorist coverage of a liability insurance policy. The Reaves
court said:
 [T]he exclusion of "bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle" is in violation of the mandate of the Alabama Uninsured Motorist statute. We are compelled to conclude it does violate the statute and is, therefore, void.
. . . . .
 While we realize that the exclusion at issue in Higgins is of a different character than that in the case at bar, we believe that the same reasoning applies. Thus, in the absence of any language in the statute authorizing the exclusion, no exclusion for injuries suffered while driving a vehicle "not an owned motor vehicle" (i.e. not listed in that particular policy) may be created by the policy . . .
[T]he fact remains that the statute mandates coverage and the legislature did not see fit to provide for such an exclusion. . . .
. . . . .
 To require an insurer under the statute to also extend coverage to such an insured while driving his own vehicle, or one belonging to another member of the household, though uninsured, does not place an unreasonable burden on an insurer. Such result not only does not conflict with the policy underlying the Uninsured Motorist Statute, but it furthers this policy. This Court has stated that policy to be:
 "Uninsured motorist coverage is intended to provide financial recompense to innocent persons who are injured and to dependents of those who are killed because of the wrongful conduct of uninsured motorists. * * *"
. . . . .
 Accordingly, we hold the exclusion in the subject policy to be void as repugnant to Tit. 36, § 74 (62a), Code of Alabama of 1940, as last amended.
. . . . .
 This Court has stated that where an exclusion in a policy is more restrictive than the Uninsured Motorist Statute, it is void and unenforceable.
[Emphasis added.]
A careful reading of the underlined portions of the decisions in the Higgins and Reaves cases convinces this court that the supreme court has taken the position "that where an exclusion in a policy is more restrictive than the Uninsured Motorist Statute, it is void and unenforceable." Furthermore, where we said in Lammers that the uninsured motorist statute neither authorizes nor forbids the exclusion sued upon, the supreme court in Higgins and Reaves said that in the absence of an exclusion in the Act, none is authorized to be read into it. In other words the legislature could have authorized exclusions in the uninsured motorist statute but not having done so, no such exclusions are permitted. The inclusion of such provisions in the uninsured motorist section of an automobile liability insurance policy tends to limit or restrict the uninsured motorist coverage and thereby conflicts with the Act.
Moreover, we are persuaded that the supreme court has not approved our decision in Lammers because it specifically said in Higgins that a denial of certiorari in Lammers did not mean an approval of the holding by this court. Further, in the next paragraph after having said denial of certiorari did not necessarily mean approval, the supreme court stated that insurance policy provisions that attempt to limit or infringe upon uninsured motorist coverage are contrary to the uninsured motorist statute and are thereby void and unenforceable.
Accordingly, we find that the household exclusion from uninsured motorist coverage previously approved in Lammers is no longer the law in this state. Consequently we hold that the policy definition of "uninsured *Page 1135 
automobile" involved in the instant case is void and unenforceable.
Farm Bureau's second issue is concerned with whether Mrs. Mitchell's death arose out of the "use" of the insured vehicle. Whether Mrs. Mitchell's death resulted from the "use" of the automobile is a factual matter to be decided by the trier of fact in the wrongful death action, not in this declaratory judgment action.
The third issue argued by Farm Bureau relates to whether recovery may be had under the uninsured motorist provisions of a liability policy for death resulting from an intentional act.
The pertinent provision in the policy in the case sub judice
is as follows:
 The Company will pay all sums which the insured . . . shall be legally entitled to recover . . . from the . . . operator of an uninsured automobile because of bodily injury . . . including death . . . sustained by the insured, caused by accident and arising out of the . . . use of such uninsured automobile. . . . [Emphasis added.]
Farm Bureau argues that where the death of an insured under a liability policy is caused by an intentional or deliberate act, such death cannot be attributed to an "accident" as required in the policy provision above quoted.
In deciding the question of whether Mrs. Mitchell's death was caused by an "accident" or the intentional act of Brown, the appellee urges this court to consider the recent Florida case of Leatherby Insurance Co. v. Willoughby, Fla.App.,315 So.2d 553 (1975). Before discussing the Willoughby case we would note that the Florida Uninsured Motorist Statute is the same as ours.
The facts in Willoughby reveal that an uninsured motorist, intentionally and deliberately, drove his truck into plaintiff, causing injuries for which damages were sought. The insurer contended that the injury did not result from an "accident" as contemplated by its policy and therefore it was not liable.
The court said:
 [W]e are here concerned with the liability of an insurance carrier to its own insured under the uninsured motorist provision of its liability policy issued to the insured as distinguished from the liability of an insurance carrier, as an indemnitor of the tortfeasor, under the ordinary liability policy issued for that propose. . . .
. . . . .
 . . . Under uninsured motorist coverage the innocent injured party, not the intentional tortfeasor, is the "insured"; and clearly, viewing the matter from the standpoint of the innocent victim, the injury is an "accident." This consideration as [sic] well articulated in Celina Mutual Insurance Company v. Saylor, [35 Ohio Misc. 81, 301 N.E.2d 721 (1973)] wherein it was said:
 "[In this case] we deal with the subject of uninsured motorists coverage. The [injured parties] have paid the insurance premiums and have consciously contracted with the [carrier] for protection. The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.
 "All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. Since the insured in the instant case was clearly not acting intentionally to [harm] herself, since the [insured] in the instant case was the party privy to the insurance contract; since the [insured] herein is the party who paid the premium for coverage to protect herself from the risk of injury caused by an uninsured third person it is the court's belief that the provisions of the insurance policy must be construed most favorably from the insured's viewpoint."
 To that we would emphasize two other compelling reasons for our conclusions herein. The first is that § 627.727 (1), F.S. 1971, which requires uninsured motorist *Page 1136 
protection in automobile liability insurance contracts (unless affirmatively rejected), was designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others. . . . Secondly, the aforesaid public policy considerations militating against self-indemnification for intentional wrongs, which perhaps may still be at least partially viable in the ordinary liability indemnification contract as noted, are obviously totally irrelevant under the uninsured motorist concept.
 We hold, therefore, that appellee, an innocent victim of an intentional tort committed by an uninsured motorist, may recover for injuries sustained thereby from his own liability carrier under the uninsured motorist provision of his policy hereinabove quoted. [Footnotes omitted.]
We consider the holding in Willoughby to be dispositive of the question of whether Mrs. Mitchell's death was due to an "accident" within the meaning of the policy in the case subjudice. In other words, viewing the matter from Mrs. Mitchell's position, she was the victim and her death was due to an "accident" within the meaning of the policy.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.