MADISON COUNTY MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, *v.* MARY GOODPASTURE, Defendant-Appellant.

(No. 69-125;

Fifth District—February 9, 1971.

Wiseman, Shaikewitz & McGivern, of Alton, for appellant.

Burton C. Bernard and Joseph R. Davidson, of Granite City, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiff, an automobile insurer, filed its complaint for declaratory judgment on December 4, 1968, and the trial court entered its judgment of June 20, 1969, in favor of plaintiff. Defendant, the named insured on the insurance policy in question, has brought this appeal.

On April 11, 1965, defendant was riding as a passenger in her 1964 Thunderbird automobile which was being operated with her permission by John Wright. An accident occurred and defendant suffered personal injuries. At the time of the accident there was in effect an automobile insurance policy written by plaintiff covering the automobile owned by defendant and naming her as the insured.

On September 17, 1965, defendant brought a personal injury action against the driver, John Wright. Plaintiff then commenced the first of three declaratory judgment actions. The first was to determine whether the liability coverage of the policy covered the claim of defendant against the driver and whether the plaintiff owed a duty of defense to the driver.

Judgment was entered on July 28, 1966, in the first declaratory judgment action and the court held:

"1. Madison County Mutual Automobile Insurance Company does

not owe a duty to John Wright nor does it have an obligation to defend him in case No. 65-V-665 or in any other case arising from claims brought against John Wright or any other person by Mary Goodpasture for property damage and personal injuries allegedly sustained by her and resulting from the mishap of on or about April 11, 1965, at which time John Wright was operating a 1964 Thunderbird automobile owned by Mary Goodpasture, the named insured under Policy No. RP18-245-432.

2. Madison County Mutual Automobile Insurance Company does not by virtue of its policy No. RP18-245-432 afford bodily injury liability and property damage liability insurance coverage to John Wright or to Mary Goodpasture on or about April 11, 1965, as a result of an automobile mishap involving her 1964 Thunderbird operated by John Wright, nor is said company liable under said policy to Mary Goodpasture for her said alleged personal injuries and property damage under coverages C and D of said policy."

No appeal was taken from this judgment.

On March 10, 1967, plaintiff filed its second declaratory judgment action to determine whether the insured motorist coverage of the policy afforded coverage to defendant for her claim. On April 16, 1968, the trial court entered its opinion in which it refused to determine the question. No appeal was taken from this judgment.

On or about October 16, 1968, the defendant filed her claim for arbitration under the uninsured motorist coverage of the policy. On October 31, 1968, plaintiff filed an application in the trial court for a stay of arbitration proceedings. On November 14, 1968, the trial court entered an order staying the arbitration proceedings and allowing plaintiff leave to file a complaint for declaratory judgment to determine the question of uninsured motorist coverage.

On December 4, 1968, the third complaint for declaratory judgment was filed. The case was determined on the pleadings and stipulated facts. The trial court rendered its opinion on June 20, 1969, in which it held that:

"1. Madison County Mutual Automobile Insurance Company does not by virtue of its policy No. RP18-245-432 afford uninsured automobile coverage to Mary Goodpasture for her claim of alleged personal injuries which occurred on April 11, 1965, as a result of an automobile mishap involving a certain 1964 Ford automobile insured by said policy.

2. Coverage F [uninsured motorist coverage] of said policy does not apply to the said claim for personal injuries of Mary Goodpasture, a named insured in said policy."

The appeal herein is taken from this judgment.

Plaintiff's argument is based on the plain language of the policy. The first insuring agreement of Coverage F provides:

"I. DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED AUTOMOBILES

The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the * * * operator of an uninsured automobile because of bodily * * * injury * * * including death resulting therefrom * * * sustained by the insured, caused by accident and arising out of the * * * use of such uninsured automobile * * *"

Definition (C) in Coverage F provides that:

"UNINSURED AUTOMOBILE" means (1) an automobile with respect to the * * * use of which there is * * * no bodily injury insurance policy applicable at the time of the accident * * * or with respect to which there is a bodily injury * * * insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder; * * * but the term "uninsured automobile" shall not include:

(i) an insured automobile * * *"

Definition (b) in Coverage F defines an "insured automobile" as an automobile "described in the schedule as an insured automobile to which the bodily injury liability coverage of the [policy] applies; * * *"

The plaintiff argues that the automobile in which defendant was riding was the automobile described in the schedule and therefore is an insured automobile and therefore cannot be an uninsured automobile, and thus John Wright was not the operator of an uninsured automobile and the uninsured motorist coverage does not apply.

Defendant takes the position that the language of the policy together with the judgment rendered by the court on July 28, 1966, require that she be covered by the uninsured motorist coverage. As stated above definition (b) in Coverage F defines an "uninsured automobile" as an automobile "described in the schedule as an insured automobile *to which the bodily injury liability coverage of the [policy] applies; * * *.*" Emphasis added. The judgment of July 28, 1966, holds that the policy does not "afford bodily injury liability and property damage liability insurance coverage to * * * Mary Goodpasture for personal injuries and property damage allegedly sustained by Mary Goodpasture on or about April 11, 1965 as a result of an automobile mishap involving her 1964 Thunderbird automobile operated by John Wright . . ."

This defendant argues that even though the automobile is an insured automobile described in the schedule, it has been judicially determined

that the bodily injury liability coverage of the policy does not apply to the automobile in this instance and therefore the 1964 Thunderbird is not excluded from being an "uninsured automobile".

The "Insuring Agreement" of Schedule F, consisting of eleven lines, is followed by approximately two legal size pages of "Definitions" and "Exclusions" and "Conditions" consisting of approximately 160 lines. Here we have not only had the experience of dealing with the verbosity of plaintiff's definitions, exclusions and conditions of its uninsured motorist coverage, but get an insight into plaintiff's position when it sought and received a favorable declaratory judgment on its coverage A through E with their attendant definitions, exclusions and conditions, in the judgment of July 28, 1966. The situation brings to our attention the recent language of a fellow judge in a neighboring state.

"Ambiguity and incomprehensibility seem to be the favorite tools of the insurance trade in drafting policies. Most are a virtually impenetrable thicket of incomprehensible verbosity. It seems that insurers generally are attempting to convince the customer when selling the policy that everything is covered and convince the court when a claim is made that nothing is covered. The miracle of it all is that the English language can be subjected to such abuse and still remain an instrument of communication. But, until such time as courts generally weary of the task we have just experienced and strike down the entire practice, we feel that we must run with the pack and attempt to construe that which may well be impossible of construction." *Osborne, J., Ky. Ct. App., in Universal Underwriters Ins. Co. v. Travelers Ins. Co., 451 S.W.2d 616 @ 622-3.*

■■ It is a basic premise in this jurisdiction that uninsured motorist coverage provisions in insurance policies shall be liberally construed. Thus if an insurer tries to limit his liability in the insurance contract such a limitation shall be construed most strongly against the insurer. *Andeen v. County. Mut. Ins. Co.* (1966), 70 Ill.App.2d 357, 217 N.E.2d 814, 818; *State Farm Mut. Auto. Ins. Co. v. Madison* (1956), 11 Ill.App.2d 206, 136 N.E.2d 533.

Paragraph 755a of chapter 73, Illinois Revised Statutes provides for uninsured motorist coverage as follows:

"On or after the effective date of this amendatory act of 1963, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury

or death set forth in Section 7-203 of the "Illinois Motor Vehicle Law", approved July 11, 1957, as heretofor and hereafter amended, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

Except that the named insured shall have the right to reject such coverage only on policies delivered, renewed or issued for delivery prior to July 1, 1967."

■■ We hold that as to this particular accident the automobile was uninsured as far as defendant is concerned within the meaning of the policy as it must be construed under the above statute. The objective of the statute is to protect persons against uninsured motorists. (*Sobina v. Busby* (1965), 62 Ill.App.2d 1, 210 N.E.2d 769, 776.) Obviously the legislative intent was that uninsured motorist coverage be auxiliary and complimentary to liability coverage and not in derogation of it.

We are in accord with the reasoning set forth in *Bowsher v. State Farm Fire and Cas. Co.* (1966), 244 Or. 549, 419 P.2d 606, in which the court stated:

"As far as his [the owner-passenger] injuries are concerned, because of the exclusions of his insurance policy his automobile was not an insured automobile and the driver was not an insured operator, notwithstanding the fact that as to the rest of the world both the automobile and the driver may have been insured."

Insofar as the cases of *Barrus v. State Farm Mut. Auto. Ins. Co.* (1969), 118 Ga. App. 348, 163 S.E.3d 759 and *Lofberg v. Aetna Cas. and Sur. Co.* (Ct.App. 1968), 70 Cal. Rptr. 269, are inconsistent herewith, they are not followed. We note that in those jurisdictions the statute on uninsured motorist coverage excluded motor vehicles owned by the insured; ours does not.

For the foregoing reasons the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

JONES and MORAN, JJ., concur.