432 So.2d 1294 (1982)
James J. O'HARE, as Administrator of the Estate of Nora O'Hare, Deceased
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
Civ. 2994.
Court of Civil Appeals of Alabama.
April 14, 1982.
Rehearing Denied May 19, 1982.
Certiorari Granted June 3, 1983.
*1295 Joseph M. Brown, Jr. of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellant.
Richard W. Vollmer, Jr. and Patricia K. Olney of Reams, Wood, Vollmer, Philips, Killion & Brooks, Mobile, for appellee.
Alabama Supreme Court 81-715.
WRIGHT, Presiding Judge.
This is an uninsured motorist insurance case.
Plaintiff is the administrator of the estate of Nora O'Hare, deceased. On September 13, 1979, Mrs. O'Hare was involved in a one-car accident and received injuries which resulted in her death. At the time of the accident, Mrs. O'Hare was riding as a passenger in her own automobile which was insured by a policy of liability insurance issued by State Farm Mutual Automobile Insurance Company (State Farm). The permissive driver of the automobile, Sheldon P. Weeks, carried no separate insurance. On September 5, 1980, plaintiff filed a three-count amended complaint in Mobile County Circuit Court. Counts one and two set forth claims against Sheldon Weeks for wrongful death on theories of negligence and wantonness, respectively. Under count three, plaintiff sought recovery of $10,000 from State Farm under the uninsured motorist provisions of the policy on Mrs. O'Hare's automobile.[1] State Farm moved for summary judgment on the grounds that under Mrs. O'Hare's policy, her automobile was an "insured motor vehicle" and the uninsured motorist provisions excluded coverage for an "insured motor vehicle." The motion for summary judgment was granted as to count three. Plaintiff's motion to reconsider the order was denied. On September 22, 1981, the court entered a final order granting State Farm's motion for summary judgment. Plaintiff appeals.
The issue presented is whether the policy exclusion of an "insured motor vehicle" from the definition of an "uninsured motor vehicle" is void and unenforceable as an attempt to restrict the uninsured motorist coverage of the Alabama Uninsured Motorist Statute.
Section 32-7-23, Code (1975) provides in pertinent part:
No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 32-7-6, ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; ....
The pertinent provisions of Mrs. O'Hare's policy with State Farm read as follows:
COVERAGE UDAMAGES FOR BODILY INJURY CAUSED BY UNINSURED MOTOR VEHICLES
To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle....
THIS INSURANCE DOES NOT APPLY:

*1296 (b) TO BODILY INJURY TO AN INSURED WHILE OCCUPYING OR THROUGH BEING STRUCK BY A LAND MOTOR VEHICLE OWNED BY THE NAMED INSURED...
Insuredthe unqualified word "insured" means:
(1) the first person named in the declarations and while residents of his household, his spouse and the relatives of either;
(2) any other person while occupying an insured motor vehicle;...
Insured Motor Vehiclemeans:
(1) an owned motor vehicle provided the use thereof is by such first named insured or resident spouse or any other person to whom such first named insured or resident spouse has given permission to use such vehicle if the use is within the scope of such permission,....
Uninsured Motor Vehiclemeans:
(1) a land motor vehicle with respect to the ownership, maintenance or use of which there is in at least the amounts specified by the financial responsibility law of the state in which the described motor vehicle is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder or is or becomes insolvent; ....
but the term uninsured motor vehicle shall not include:
(i) a vehicle defined herein as an insured motor vehicle;

The basic purpose of the Uninsured Motorist Act (UMA) is to insure that Alabama citizens who purchase automobile liability insurance are able to obtain for an additional premium the same protection against injury or death at the hands of an uninsured motorist as they would have had if that motorist had obtained for himself the minimum coverage prescribed by the Safety Responsibility Act. Higgins v. Nationwide Mutual Insurance Company, 50 Ala.App. 691, 282 So.2d 295, aff'd, 291 Ala. 462, 282 So.2d 301 (1973).
Restrictive policy provisions in derogation of the statute will be held void and unenforceable as against public policy. State Farm Fire and Casualty Company v. Lambert, 291 Ala. 645, 285 So.2d 917 (1973). For example, in Higgins, supra, a provision in a liability policy excluded from uninsured motorist coverage an automobile owned by the government or a subdivision thereof. The provision was found to be more restrictive than the UMA and was therefore void as thwarting the basic purpose of the statute. In State Farm Automobile Insurance Company v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974), the court held that the scope of uninsured motorist coverage must be coextensive with liability coverage. Since the UMA refers to "persons insured thereunder," a policy which extended liability coverage to a person under the omnibus clause, could not exclude him from uninsured motorist coverage by limiting uninsured motorist coverage to the "named insured."
Neither Higgins, Reaves, nor any other Alabama cases which we have found deal with the precise exclusion at issue in the case before us. We consider, however, that the provision in the State Farm policy excluding "insured motor vehicle" from the definition of an "uninsured motor vehicle" should be viewed in the same light as the household exclusions at issue in Lammers v. State Farm Mutual Automobile Insurance Company, 48 Ala.App. 35, 36, 261 So.2d 757, cert. denied, 288 Ala. 745, 261 So.2d 766 (1972); Byrd v. Alabama Farm Bureau Mutual Casualty Insurance Company, 366 So.2d 1108 (Ala.1979); and Mathis v. Auto-Owners Insurance Company, 387 So.2d 166 (Ala.1980).
In Lammers, the policy provided that the term "uninsured automobile" did not include an automobile owned by the named insured or any resident of the same household. *1297 This court upheld the exclusion and denied uninsured motorist coverage to the insured's wife who was injured in a one-car accident while riding in the vehicle described in the policy.
In Byrd, the wife and daughter of the insured were injured in a one-car accident while riding as passengers in the insured's automobile. The policy contained a household exclusion. The wife and daughter contended that since they were excluded under the liability provisions of the policy, there was no bodily injury bond or insurance policy applicable at the time of the accident to compensate them for their injuries. The argument that the driver was therefore an "uninsured motorist" and the vehicle an "uninsured motor vehicle" was rejected. The supreme court affirmed a summary judgment for the insurance company explicitly following the decision in Lammers.
In Mathis, a household exclusion defining "insured" to exclude an insured's stepdaughter who owned her own automobile was upheld as valid. The supreme court again cited Lammers with approval, quoting from that decision in part: "What availeth it to an insurance company to escape liability under the `household exclusion' clause and then find itself caught in the net of the `uninsured motorist' clause?"
That expression from Lammers and Mathis appears applicable in this case. Though the permissive driver is an "insured" under the definition section of the liability provision of the policy, because of a subsequent exclusion, such driver is not an insured for bodily injury to the named insured. Therefore there is a valid exclusion from liability coverage for bodily injury to any "insured." Why, then, should it not be acceptable to exclude coverage under the uninsured motorist provision for the same reason that exclusion under the liability provision is acceptable? To paraphrase, it would availeth the insurer little to escape liability under an exclusion, only to be caught for the same injury under uninsured motorist coverage. We see little distinction in principle in the "household" exclusion and a "permissive driver" exclusion. It is clear from the policy that in either case the driver and the driven vehicle are insured to everyone except to the permissive owner or resident spouse. If the exclusion is denied and the permissive driver, with the named insured, present in the vehicle, negligently collides with another vehicle, injuring both the named insured and occupants of the other vehicle, he would be insured for liability as to the others but uninsured as to the named insured both as to liability and uninsured motorist. If the driver is determined legally liable for the injuries, the insurer could be required to pay under both liability and uninsured motorist provisionsliability to third party and uninsured motorist to named insured. In another perspective, if the negligent permissive driver was deemed an agent of the named insured, suit could be brought against the named insured.[1] He could be found vicariously liable for the negligence of his driver, defended by his insurer, and damages assessed against him paid by his insurer, yet he could claim his driver was uninsured under uninsured motorist coverage and recover for his injuries.
Such apparent results appear so contrary to reason that we deem them not to have been within the purpose and intent of the legislature in the requiring of uninsured motorist coverage. Thus the prevention of such results by excluding from coverage the vehicle insured in the policy is not repugnant to the Uninsured Motorist Act. We find the exclusion such a reasonable extension of the "household" exclusion as to be in line with the decisions in Lammers, Byrd and Mathis. We do not consider the decision in Alabama Farm Bureau Mutual Casualty Insurance Co. v. Mitchell, 373 So.2d 1129 (Ala.Civ.App.1979) appropriate to the facts of this case.
The Supreme Court of Mississippi in the case of Aitken v. State Farm Mutual Automobile Insurance Co., 404 So.2d 1040 (Miss. *1298 1981) in interpreting a similar policy under similar facts held that the motor vehicle cannot be both insured and uninsured in the same policy. Neither can the driver be insured as a permissive driver and at the same time be uninsured for purposes of uninsured motorist coverage. We concur with that statement.
We note that the Mississippi court also said that the purpose of the uninsured motorist statute and of the insurance policy was to cover injuries caused by another and separate motor vehicle owned or operated by one who did not have liability insurance coverage. Such an observation is of interest but we do not adopt it in this case.
The summary judgment in favor of State Farm below is affirmed.
AFFIRMED.
BRADLEY, J., concurs.
HOLMES, J., dissents.
HOLMES, Judge (dissenting).
I respectfully dissent. In so doing I acknowledge that this is a difficult issue and that the majority decision is not without support in the form of decisions from other jurisdictions. For the reasons stated below, however, I cannot agree that judicial recognition of the "household exclusion" in Lammers, Byrd and Mathis requires this court to now recognize a "permissive driver" exclusion in uninsured motorist coverage.
The appellant cites to this court three decisions, Madison County Mutual Automobile Insurance Co. v. Goodpasture, 130 Ill. App. 943, 267 N.E.2d 31 (1971), Barnes v. Powell, 49 Ill.2d 449, 275 N.E.2d 377 (1971), and Bowsher v. State Farm Fire and Casualty Co., 244 Or. 549, 419 P.2d 606 (1966), in which the courts of two of our sister states were presented with the same issue that is now before this court. The facts of those cases are very similar to the facts of the instant case. In each of the above cases, because no other insurance was available due to policy exclusions, the owners of the automobiles were seeking to recover under the uninsured motorist provisions of their various policies for injuries sustained in automobile accidents which occurred while they were passengers in their own automobiles which were being driven by permissive drivers. In each case the automobile in question qualified as an "insured automobile" and the insurance policies excluded "insured automobiles" from uninsured motorist coverage. Based upon these facts the Illinois Supreme Court, the Illinois Court of Appeals and the Oregon Supreme Court concluded that the uninsured motorist coverage was available to these owner-passenger claimants.
The reasoning employed by each of the above courts to reach this conclusion was practically identical. Each decision was based upon the general purpose of all uninsured motorist legislation which is, as the majority correctly indicates, to protect persons against uninsured motorists. After establishing the purpose of uninsured motorist coverage, the above courts then focused upon whether the permissive driver was covered by any insurance that could provide compensation for the owner-passenger's injury. In each case the driver was covered by no such insurance; consequently, as to the owner-passenger, the driver was an uninsured motorist which brought the driver within the owner-passenger's uninsured motorist coverage.
Both the Illinois and Oregon courts recognized that the conclusion reached by them could conflict with some other valid exclusions contained within the insurance policies. Nevertheless, considering the purpose of the uninsured motorist legislation, these courts did not believe that such possible conflict required denial of uninsured motorist coverage under these circumstances. According to the Oregon Supreme Court, the proper focus in uninsured motorist cases is to "ascertain whether the injury for which a claim is made was covered by liability insurance, .... Such a focus seems more relevant than a general inquiry whether some kind of insurance covered, for some purposes, the automobile involved in the accident, regardless of the applicability of such insurance to the injuries sustained...." *1299 Bowsher, supra, 419 P.2d at 608.
Focusing solely upon Mrs. O'Hare, the above reasoning would clearly bring into effect her uninsured motorist coverage for, as to Mrs. O'Hare, the permissive driver was an uninsured motorist. This is so even though the driver was covered by Mrs. O'Hare's own insurance against liability to any third person.
As is evidenced by Lammers, Byrd and Mathis, the courts of this state have not always focused solely upon whether the injury for which a claim is made was covered by liability insurance. The claimants in Lammers and Byrd were members of the household of the insured and were seeking compensation from the insured's insurance company. The injuries for which they sought compensation were not covered by the insured's liability insurance because each of the policies in question contained some form of household exclusion. No other insurance was available to compensate the claimants for their injuries. Consequently, the claimants contended that they should be allowed to recover under the uninsured motorist provisions of the policies. This contention was rejected in Lammers. Based upon Lammers, this contention was also rejected in Byrd. Though Mathis involved a somewhat different issue, the supreme court cited with approval a portion of the Lammers discussion regarding household exclusions.
Since the Lammers case is the leading case, I think that it would be beneficial to carefully examine the reasoning process employed by this court in that case. Before the Lammers court reached its decision, it first carefully set out the purpose served by household exclusion clauses. In Blow v. State Farm Mutual Automobile Insurance Co., 284 Ala. 687, 692, 228 So.2d 4, 8 (1969), our supreme court quoted with approval the following language from Hunter v. Southern Farm Bureau Casualty Co., 241 S.C. 446, 129 S.E.2d 59 (1962):
"* * * The purposes of the exclusion clause is to exempt the insurer from liability to those persons whom the insured, on account of close family ties, would be apt to be partial in case of injury. Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108; Cartier v. Cartier et al., 84 N.H. 526, 153 A. 6."
After establishing the purpose served by household exclusion clauses and noting that such clauses had long been approved of by the courts of this state, the court determined that acceptance of the claimant's contention would do violence to such well established principles. Lammers, supra at 40, 261 So.2d at 761. In light of the decision reached by this court it is apparent that they concluded that the purpose served by the household exclusion was so compelling that it would not allow the claimants to circumvent that purpose by allowing recovery under the uninsured motorist coverage.
The reasoning employed by this court in Lammers is, I believe, equally applicable to the facts of the present case. Specifically, I am of the opinion that before this court can deny the plaintiff recovery under the uninsured motorist coverage it must first determine the purpose served by the "permissive driver" exclusion in the liability coverage and secondly, it must determine whether that purpose is sufficiently compelling to deny uninsured motorist recovery. With regard to the first step, having found no discussion of the purpose served by a "permissive driver" exclusion in either case or commentary, I must conclude that such exclusion serves the same basic purpose as the household exclusion, i.e., avoidance of friendly lawsuits and the possibility of collusion inherent therein. With regard to the second step, I am of the opinion that the purpose served by the "permissive driver" exclusion has, at best, dubious validity. Therefore, I must conclude that such a purpose is not a sufficiently compelling basis for denial of uninsured motorist coverage in this case.
I find support for my opinion as to the validity of the underlying purpose served by the "permissive driver" exclusion in the changing trends regarding interfamily tort immunity and household exclusion clauses. The fear of fraudulent (collusive) claims, in *1300 addition to being the basis for household exclusions, also serves, at least in part, as the justification for the doctrine of interfamily tort immunity. The validity of the perceived justification for each of these legal tenets is coming under increased scrutiny throughout the country. For example, the courts of Alabama, as well as the courts of numerous other states, have rejected the doctrine of interspousal tort immunity thereby implicitly, if not explicitly, rejecting the previously perceived justification for the immunity. See Penton v. Penton, 223 Ala. 282, 135 So. 481 (1931); W. Prosser, Handbook of the Law of Torts § 122 (4th ed. 1971). Though Alabama has not done so, numerous other states have also abrogated parent-child tort immunity. W. Prosser, supra. Household exclusion clauses themselves are being more closely scrutinized with the trend being to hold such exclusions void and unenforceable. 12 M. Rhodes, Couch Cyclopedia of Insurance Law 2d § 45:510 (rev. ed. 1981). At least one court has referred to the household exclusion as "a social anachronism." State Farm Mutual Automobile Insurance Co. v. Smith, 109 Cal.App.3d 575, 167 Cal.Rptr. 410 (1980).
In light of the foregoing trends and with knowledge of the purpose of uninsured motorist legislation, I do not believe this court should give further efficacy to a permissive driver exclusion by allowing it to serve as a justification for denying uninsured motorist coverage. By saying the foregoing, I do not mean to indicate that the "permissive driver" exclusion itself is void. The parties are free to contract as they see fit and, in the absence of statutory provisions to the contrary, the contract will be enforced as written. Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7 (1937). All I mean to say is that the purpose served by such an exclusion is not a sufficiently compelling basis upon which to deny uninsured motorist coverage.
Needless to say, I believe that the uninsured motorist coverage should be available in this case.
NOTES
[1] Compensation for bodily injury provided under the medical payments and major medical provisions of the policy has apparently been paid.
[1] Agency under such circumstances is presumed. Brown v. Southeastern Greyhound Lines, Inc., 255 Ala. 308, 51 So.2d 524 (1951).