404 So.2d 1040 (1981)
Robin Black AITKEN
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 52882.
Supreme Court of Mississippi.
October 21, 1981.
Rehearing Denied November 4, 1981.
W.O. Dillard, Scott Stuart, Jackson, for appellant.
Steen, Reynolds Dalehite & Currie, Edward J. Currie, Jr., Jerome B. Steen, Whitman B. Johnson, III, Jackson, for appellee.
Before ROBERTSON, P.J., and WALKER and LEE, JJ.
*1041 ROBERTSON, Presiding Justice, for the Court:
Robin Black Aitken sued State Farm Mutual Automobile Insurance Company, in the Circuit Court of the First Judicial District of Hinds County, to recover damages either under the personal injury liability provision or under the uninsured motorist clause of her insurance policy with State Farm for injuries suffered by her when her fiance, Thomas Aitken (whom she later married before filing suit) negligently drove her car into a telephone post. Aitken was driving her car with her permission, and she was seated on the passenger side of the front seat. In her policy, the named insured was "Robin Black" and the insured motor vehicle was her "1976 Sunbird".
After plaintiff had rested, State Farm moved for a directed verdict on the grounds that: (1) under the provisions of her policy the term "uninsured motor vehicle" shall not include a vehicle defined in the policy as an "insured motor vehicle", (2) neither the uninsured motorist statute [MCA §§ 83-11-101 et seq. (Supp. 1980)], nor the uninsured motorist provision of her policy covered such an action; and (3) because she married Aitken before filing suit, he would not be liable to her for damages under the doctrine of interspousal immunity, and therefore her insurer, who steps into her shoes by right of subrogation against the uninsured motorist, would not be liable.
*1042 The court sustained the motion for a directed verdict, and it is from that judgment that plaintiff, Robin Black (Aitken), appeals.
She makes these three assignments of error:
I. The trial court erred in sustaining the motion for a directed verdict on the grounds that the vehicle was excluded by the policy.
II. The trial court erred in sustaining a motion for a directed verdict on the grounds that the appellant could not recover because of interspousal immunity.
III. The trial court erred in sustaining the motion for a directed verdict and excluding the evidence of the appellant on punitive damages.
On the rainy night of September 14, 1978, around 11:00 p.m., Thomas Aitken was driving Robin Black's 1976 Pontiac Sunbird north on Ridgewood Road in the City of Jackson about 100 yards south of its intersection with Old Canton Road. In her declaration against State Farm, plaintiff charged that Aitken was driving too fast under existing weather and road conditions, that he failed to use due care and his negligent driving caused him to lose control of her car and caused it to run into a telephone pole off of Ridgewood Road. She charged that his negligence was the sole cause of her injuries.
Thomas Aitken, a traveling salesman, had allowed his liability insurance to lapse by not paying the premiums. State Farm promptly paid plaintiff the $5,000 medical pay coverage and all damages due her under the collision coverage of her policy. Bodily injury liability coverage under her policy was denied, and also coverage under Section III (uninsured motor vehicle coverage) was denied. Plaintiff alleged in her declaration against State Farm that she was entitled to recover under either theory. Plaintiff's insurance contract with State Farm contained these provisions:
SECTION III  UNINSURED MOTOR VEHICLE COVERAGE
INSURING AGREEMENTS
COVERAGE U  DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED MOTOR VEHICLES
To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle ...
Under "Definitions  Section III" of the Uninsured Motor Vehicle Coverage are found these provisions:
Insured Motor Vehicle  means:
(1) an owned motor vehicle provided the use thereof is by such first named insured or resident spouse or any other person to whom such first named insured or resident spouse has given permission to use such vehicle if the use is within the scope of such permission, ...
.....
Uninsured Motor Vehicle  means:
(1) a land motor vehicle with respect to the ownership, maintenance or use of which there is in at least the amounts specified by the financial responsibility law of the state in which the described motor vehicle is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder or is or becomes insolvent; or
(2) a hit-and-run motor vehicle as defined;
but the term uninsured motor vehicle shall not include:

*1043 (i) a vehicle defined herein as an insured motor vehicle;
Plaintiff-Appellant contends that these policy provisions are in conflict with the Uninsured Motorist Coverage statute which provides:
"[T]he term `uninsured motor vehicle' means a motor vehicle as to which there is (1) no bodily injury liability insurance, or bodily injury liability insurance with limits less than the amounts specified in section 83-11-101, but it will be considered uninsured only for that amount between the limit carried and the limit required in section 83-11-101, (2) there is such insurance in existence but the insurance company writing the same has legally denied coverage thereunder or is unable, because of being insolvent at the time of or becoming insolvent during the twelve (12) months following the accident, to make payment with respect to the legal liability of its insured within the limits specified in said section 83-11-101, or (3) there is no bond or deposit of cash or securities in lieu of such bodily injury and property damage liability insurance or other compliance with the state financial responsibility law." [MCA § 83-11-103 (1972)].
Perhaps it would be helpful in answering this question to review the history and purpose of the uninsured motorist coverage statutes.
In two rather recent cases, this Court has discussed the basic purpose of the uninsured motorist statutes:
"In interpreting similar, if not identical statutes, the vast majority of jurisdictions have stated that the purpose of such uninsured motorist laws is to provide protection to innocent insured motorists and passengers injured as a result of the negligence of financially irresponsible drivers....
... Its purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy." Rampy v. State Farm Mutual Automobile Insurance Co., 278 So.2d 428, 432 (Miss. 1973); Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767, 770 (Miss. 1973).
Actually the purpose of the UMC statute and Section III of the appellant's insurance policy was to cover injuries caused by another and separate motor vehicle owned or operated by a person who did not have liability insurance coverage on his automobile or had such coverage in an insurance company that became insolvent or bankrupt.
MCA Section 83-11-103 (1972), makes Thomas Aitken an "insured" under appellant's policy with this language:
"[T]he term `insured' means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, ..." (Emphasis added).
"The definition of the term `insured' given in this paragraph shall apply only to the uninsured motorist portion of the policy."
These provisions of the UMC statute make plain the logic and reasonableness of the policy's definitions of an "Insured Motor Vehicle" and an "Uninsured Motor Vehicle" and the provision that the vehicle cannot be both "Insured" and "Uninsured" in the same policy. Neither can Thomas Aitken be an "Insured" under the policy as driver of the "Named Insured's" automobile with her permission, and at one and the same time be an "Uninsured Motorist" under the policy.
The trial court was correct in sustaining appellee's motion for a directed verdict on another ground, that of interspousal immunity. The accident in the case at bar occurred on September 14, 1978. Appellant Robin Black married Thomas Aitken (the negligent driver of her car) on March 9, 1979. She filed her declaration against State Farm only on May 11, 1979.
*1044 In the early case of H.L. Austin v. Maryland Casualty Co., 105 So. 640 (Miss. 1925), (not reported in Mississippi Reports), which also arose out of automobile accident injuries to the wife, this Court stated that "neither the husband nor the wife had any cause of action against the other for personal tort" and further, in finding the insurance company not liable, stated:
"The insurance policy in this case only undertook to indemnify the husband `against loss from liability imposed by law.' The trouble with Mrs. Austin's case is that there is no liability imposed by law upon her husband for the injury done her. The law gives her no cause of action, and it gives her none because under the law no legal wrong has been done her by her husband. Whatever wrong was done her, if any, was a moral wrong in the form of a tort. As between husband and wife, that was no ground of recovery." 105 So. at 640.
The appellant argues that at the time of the accident she was a single person and not married to Thomas Aitken, the driver of her car, and therefore interspousal immunity would not apply. Her argument was answered by this Court adversely to her contention in Scales v. Scales, 168 Miss. 439, 151 So. 551 (1934). In Scales, we said:
"The appellant sued the appellee for damages resulting from a personal injury, alleged to have been caused by the negligence of the appellee. At the time of the injury, she was riding in an automobile driven by the appellee, which, as she alleges, because of the negligence of the appellee, skidded, turned over, and she was thereby injured. After this injury occurred, the appellant married the appellee, and is now his wife. The appellee, by a special plea, set up the disabilities of coverture as a bar to the action... .
"... It is said by counsel for the appellant that her cause of action accrued prior to the marriage and continued to exist thereafter, and, therefore, even under the Austin Case, the appellant has the right here to sue. At common law, the ground on which no right of action accrues to one spouse against the other for the commission of a personal tort is the legal unity of their persons by virtue of the marriage. The reasons underlying this rule apply with equal force to the continuance of a cause of action which one spouse has against the other prior to their marriage; so that to be logical we must hold, in consonance with the weight of authority, that in the absence of a statute to the contrary, a right of action in one spouse against the other for the commission of a personal tort, existing prior to the marriage, is extinguished by the marriage. [Citing authorities]. 168 Miss. at 442-43, 151 So. at 551.
In Kathryn McNeal, Individually and as natural mother of Myrna Ann McNeal, a Minor, v. Administrator of the Estate of McNeal, Deceased, and State Farm Mutual Automobile Insurance Co., 254 So.2d 521 (Miss. 1971), this Court said:
"This rule has been followed in this state since 1924 beginning with Austin v. Austin, 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388 (1924), in which a wife sought to sue her husband for injuries resulting from her husband's negligent operation of an automobile. The same rule was had in the following cases: Ensminger v. Ensminger, 222 Miss. 799, 77 So.2d 308 (1955), (wife sued her husband for injuries caused by negligent operation of automobile); McLaurin v. McLaurin Furniture Co., 166 Miss. 180, 146 So. 877 (1937), (wife sued her husband for negligent operation of automobile); Scales v. Scales, 168 Miss. 439, 151 So. 551 (1934), (a wife sued her husband for injury from negligent operation of automobile)." 254 So.2d at 522-23.
The trial court also rejected the appellant's argument that, since the defense of interspousal immunity is a personal one, it cannot be raised by one not a party to the marriage. This defense was asserted by Maryland Casualty Co. in the Austin suit, and this Court affirmed the judgment in its favor. The rationale of Austin v. Maryland Casualty Co., supra, is particularly applicable to coverage under the uninsured motorist *1045 statute because MCA section 83-11-107 (1972) provides:
"An insurer paying a claim under the endorsement or provisions required by section 83-11-101 shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death, or damage to the extent that payment was made, including the proceeds recoverable from the assets of the insolvent insurer."
It was not intended that the named insured be granted greater rights against the uninsured motorist carrier than she would have enjoyed against the uninsured tort feasor. Such a result would violate the stated purpose of the UMC statute and render section 83-11-107 meaningless where the statute provides:
"An insurer paying a claim under the endorsement or provisions required by section 83-11-101 shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death, or damage to the extent that payment was made, ..."
The insurance carrier thus succeeds to the defenses available to the so-called uninsured motorist. If Aitken cannot be sued, then his wife's insurance carrier cannot be sued and the carrier can assert any defense available to Aitken, the husband.
In Winner v. Ratzlaff, 211 Kan. 59, 505 P.2d 606 (Kan. 1973), the Supreme Court of Kansas said:
"We construe the words `legally entitled to recover as damages' to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean that in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, that the other motorist is legally liable for damage to the insured, and the amount of this liability. In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc., . .." 505 P.2d at 610. (Emphasis added).
The fact that we are affirming the trial court answers the assignment of error on excluding the evidence of the appellant on punitive damages. This demonstrates beyond per adventure that the appellee had legitimate and arguable reasons for not paying appellant's claim. See: Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797 (Miss. 1979); Standard Life Ins. Co. v. Veal, 354 So.2d 239 (Miss. 1977).
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.