Michael L. BURTON, Appellant,

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Appellee.**

No. S-3224.

Supreme Court of Alaska.

Aug. 10, 1990.

Stephen M. Sims, Law Offices of Stephen M. Sims, Anchorage, for appellant.

Paul W. Waggoner, Law Offices of Paul Waggoner, Anchorage, for appellee.

Before MATTHEWS, C.J., RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

Michael Burton, the owner of a motor vehicle insurance policy issued by State Farm Fire and Casualty Co. ("State Farm"), was injured seriously while riding as a passenger in his insured vehicle. State Farm settled claims against Burton and the driver of Burton's vehicle in excess of the per occurrence limit of Burton's liability coverage. Burton then sought payment for his injuries under his underinsured motor vehicle coverage. State Farm

---

**5.** I find it difficult to determine which criterion of Appellate Rule 304 justifies discretionary review of this case.

refused to pay on the ground that the policy's definition of underinsured motor vehicle excludes the insured vehicle. Burton challenged this exclusion as contrary to his reasonable expectations and various statutory provisions. The superior court dismissed Burton's claims and Burton appealed. We believe that the State Farm exclusion impermissibly limits the coverage State Farm offers and accordingly reverse.

## I.

On February 26, 1985, Burton purchased insurance from State Farm for his new pickup truck. The policy provided both liability coverage and uninsured and underinsured motor vehicle coverage of $100,000 per person and $300,000 per occurrence. The policy also provided $25,000 in medical payments coverage and $10,000 in death and dismemberment coverage.

The liability coverage of Burton's policy protected Burton and permissive users of his truck from legal liability to others. The liability coverage did not extend to "any bodily injury to ... any insured...." Burton's medical expenses were within the scope of his medical payments coverage. Damage to the truck was within the scope of Burton's collision coverage. The uninsured and underinsured motor vehicle coverage provided that Burton could recover from State Farm damages for bodily injury and property damage that he was "legally entitled to collect from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle." The policy specifically provided that uninsured and underinsured motor vehicles did not include motor vehicles "insured under the liability coverage of the policy."

On July 28, 1985, Burton was a passenger in his truck which was being driven by Dan Jones. Jones negligently collided with another car. As a result of the collision, Burton sustained severe injuries. The record indicates that State Farm paid Burton $25,000 under the medical payments coverage and $5,000 under the dismemberment coverage of his policy.

A multiplicity of legal actions followed the collision. With Burton's approval, State Farm paid $265,000 to the occupants of the other vehicle in exchange for a release of their claims against Jones and Burton. State Farm paid Burton $35,000 plus costs and attorney's fees on his claim against Jones.

After these settlements, Burton commenced an action against State Farm for declaratory relief and damages under the underinsured motor vehicle coverage of his policy. Burton argued that since he was injured by a motor vehicle (his own) that was underinsured with respect to him (he received less than the $100,000 per person limit of his liability and underinsured motor vehicle coverages), he should receive an additional $65,000 from State Farm. Burton argued that the limiting language in the liability and underinsured motor vehicle coverages of his policy is contrary to public policy as expressed in Alaska's compulsory insurance statutes. AS 21.89.020; AS 28.-22. He also based his claim upon what he says were his reasonable expectations when buying the policy. The superior court dismissed Burton's claims. Burton appealed.

## II.

Burton maintains that the provision in his policy that liability coverage does not extend to an insured's bodily injuries (a "household exclusion") denies him the coverage he expected and that is required by statute. State Farm has paid claims in excess of the $300,000 per occurrence limit of Burton's liability coverage. Regardless whether the exclusion is valid or consistent with his reasonable expectations, State Farm is not bound to pay anything beyond the per occurrence limit of Burton's liability coverage. We will not grant declaratory judgment of a moot question. *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1035–36 (Alaska 1972). We therefore do not consider Burton's arguments concerning this exclusion in his policy.

## III.

██ Burton argues that State Farm provided him with less underinsured motor

vehicle coverage than it is required to provide by statute. We agree.[1]

Alaska law defines an "underinsured motor vehicle" as:

> a motor vehicle licensed for highway use with respect to ownership, operation, maintenance, or use for which there is a bodily injury or property damage insurance policy or a bond applicable at the time of an accident and the amount of insurance or bond
>
> . . . .
>
> (B) has been reduced by payments to persons other than an insured, injured in an accident, to less than the limit for uninsured and underinsured coverage of the insured's policy.[2]

Burton's truck was an underinsured motor vehicle as that term is defined in AS 28.40.100(a)(17) (now AS 28.40.100(a)(16)) because the amount of insurance available to Burton was "reduced by payments to persons other than [Burton] . . . to less than the limit for uninsured and underinsured coverage of [Burton's] policy." AS 28.40.100(a)(17).

Insurance companies offering automobile liability insurance must offer uninsured and underinsured motor vehicle coverage with limits at least equal to those of the liability coverage. AS 21.89.020(c). The purpose of this coverage is to protect "the persons insured under the policy who are legally entitled to recover damages from the . . . operator of an . . . underinsured motor vehicle because of bodily injury . . . arising out of the . . . use of the . . . underinsured motor vehicle." AS 28.22.010(a)(3) (same language now in AS 28.22.101(e)). Burton falls within the scope of this protection. He was injured by the use of an underinsured motor vehicle, his own, and was entitled to recover from the operator, Jones. State Farm was required to provide the statutory minimum coverage unless Burton waived it in writing. AS 21.89.020(e).

The statute also provides that the uninsured and underinsured coverage does not protect an insured while occupying an uninsured vehicle owned by the insured or a relative. AS 28.22.130(1) (now AS 28.22.231(1)). A clear implication of this provision is that if an insured is occupying an insured vehicle owned by him, he is protected by his underinsured motor vehicle coverage. Were this not the case, an insured could buy no automobile insurance covering his own pain and suffering and lost income in the event he is injured while occupying his own vehicle.

Insurers are not permitted to issue policies containing provisions that reduce the scope of coverage below the legal minimum. *Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1251–52 (Alaska 1988). Although AS 28.22.500 (now AS 28.22.301) allows insurers to include in their policies other exclusions "that do not violate the requirements of this chapter or other applicable laws," we must construe this section together with the rest of the Mandatory Motor Vehicle Insurance Act so that all of the statute's sections have meaning and none conflict. Furthermore, if a specific section conflicts with a general section, the specific section controls. *In re Estate of Hutchinson*, 577 P.2d 1074, 1075 (Alaska 1978). We do not believe that the legislature intended AS 28.22.500 to allow insurers to rewrite the definition of underinsured motor vehicle contained in AS 28.40.100(a)(17). Here, the State Farm policy did not provide coverage in cases where the insured vehicle was an underinsured vehicle. The statute permits no such exclusion.[3]

---

1. We thus have no occasion to address Burton's argument that the exclusion is contrary to his reasonable expectations at the time he purchased the policy.

2. AS 28.40.100(a)(17) (now AS 28.40.100(a)(16)). All of AS 28.22 and certain other statutory provisions concerning insurance were repealed by Ch. 70, § 17, SLA 1984 effective January 1, 1989. A new AS 28.22 differing from the old in many respects was enacted in Ch. 108, § 1, SLA 1989 effective June 14, 1989. We apply the law that was in effect on February 26, 1985, the day Burton purchased his policy, but observe that our holding today may be relevant in interpreting AS 28.22 as it now exists.

3. This conclusion is consistent with decisions in a number of other jurisdictions. *E.g., Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d

### IV.

Burton argues that because the exclusion is invalid he is entitled to $100,000 of underinsured motorist protection. Since Burton received $35,000 from State Farm under his liability coverage, he claims State Farm is liable to him for $65,000. State Farm responds that Burton is entitled to only $50,000 in underinsured motorist coverage without the invalid exclusion from which all of the payments Burton has received, totalling $60,000, should be deducted. State Farm observes that $50,000 is the statutory minimum liability coverage. AS 28.22.010(a)(2)(A) (same minimum now in AS 28.22.101(d)(1)). Although State Farm is required to offer underinsured motor vehicle coverage in the amount of liability coverage, AS 21.89.020(c), coverage in excess of statutory minimums is not subject to statutory requirements. AS 28.22.-030(a) (now AS 28.22.121(a)). State Farm reasons that our decision invalidating the State Farm exclusion therefore should apply only to the first $50,000 of Burton's coverage.

State Farm correctly states the majority rule that when an exclusion is invalidated, the insurer's liability is limited to the statutory minimum. *See, e.g., Arceneaux v. State Farm Mut. Auto. Ins. Co.*, 113 Ariz. 216, 550 P.2d 87, 89 (1976); *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478, 483 (1981). This rule was developed primarily in cases involving exclusions to liability coverage. The statutory minimum liability coverage is a dollar amount prescribed by statute. AS 28.22.010(a)(2)(A). This case is somewhat different. State Farm is required to offer uninsured and underinsured motorist coverage in the amount of liability coverage purchased voluntarily. AS 21.89.-020(c). Therefore, the statutory minimum of underinsured motor vehicle insurance coverage is the actual amount of liability insurance purchased. Because Burton bought $100,000 in liability insurance, he is entitled to underinsured motor vehicle coverage satisfying the statutory require-ments in the amount of $100,000, less the deductions provided in his policy.

The parties disagree whether payments under Burton's medical payments coverage should be deducted. Burton's policy clearly provides that the amount payable under underinsured motorist coverage for bodily injury "shall be reduced by any amount paid or payable to or for the insured under ... the liability coverage ... [or] the medical payments coverage...." Nothing in the medical payments coverage of the policy contradicts this. Although the "conditions" section of the policy provides that "medical payments ... coverage payments are not recoverable by us," this provision refers only to State Farm's right of subrogation, which is not at issue here. This provision does not conflict with the provision reducing an insured's underinsured motorist coverage by the amount paid under his medical payments coverage. Thus, Burton should receive $100,000 reduced by the $35,000 he received under his liability coverage and the $25,000 he received for medical payments, or $40,000.

The decision of the superior court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, Justice, dissenting.

Alaska law requires insurance companies offering automobile liability insurance to offer uninsured and underinsured motorist coverage with limits equal to those of the liability coverage. AS 21.89.020(c). The statute defines "underinsured motor vehicle" as:

> a motor vehicle licensed for highway use with respect to ownership, operation, maintenance, or use for which there is a bodily injury or property damage insurance policy or a bond applicable at the time of an accident and the amount of insurance or bond

903, 909–10 (Iowa 1973); *Carmichael v. Government Employees Ins. Co.*, 54 A.D.2d 140, 388 N.Y.S.2d 354, 356 (App.Div.1976); *Bowsher v. State Farm Fire and Cas. Co.*, 244 Or. 549, 419 P.2d 606, 608 (1966) (overruled by statute, 1967 Or.Laws ch. 482, § 3 (codified as amended at Or. Rev.Stat. § 742.504(2)(e)(A) (1989))).

**(A)** is less than the limit for uninsured and underinsured coverage of the insured's policy; or

**(B)** has been reduced by payments to persons other than an insured, injured in an accident, to less than the limit for uninsured and underinsured coverage of the insured's policy.

AS 28.40.100(a)(17). An insured may waive this coverage in writing. AS 21.89.020(e). AS 28.22.130 provides that uninsured and underinsured coverage does not protect an insured while occupying a vehicle owned by the insured or a relative and not insured or when struck by a vehicle owned by the insured or a relative.[1] Policies may contain other limitations and exclusions "that do not violate the requirements of this chapter or other applicable laws." AS 28.22.500.

State Farm's refusal to pay Burton for his injuries is based on its contention that the policy's definition of underinsured motor vehicle excludes the insured vehicle. In this regard the policy in question reads as follows:

An underinsured motor vehicle does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for the regular use of you, your spouse or any relative, ...

6. defined as an 'uninsured motor vehicle' in your policy.[2]

In response to Burton's contention that State Farm provided him with less underinsured motor vehicle coverage than required by statute I think this court must decide whether Alaska's mandatory underinsured motorist coverage should extend to cases where the insured vehicle is involved in a

collision and, for one reason or another, the losses of a named insured are not fully compensated.

Burton advances the theory that although his vehicle was insured at the time of the accident and he has recovered in excess of the total per-occurrence limit provided in his policy, he is entitled to recover damages for himself as the owner of an underinsured vehicle. My fundamental disagreement with the construction urged by Burton is that it is unsupported by legislative intent. Analysis of the relevant statutes suggests that the legislature never contemplated recovery pursuant to underinsured motor vehicle coverage when the insured vehicle is the only vehicle alleged to be underinsured.

Alaska law authorizes insurance carriers to contractually create any exclusion not specifically prohibited by law. AS 28.22.-500. Thus, State Farm correctly argues that it has a right to contract for the exclusion at issue unless Burton can point to a particular provision of state law prohibiting the exclusion. Burton argues that taken together, the definition of underinsured motor vehicle coverage and the mandatory offering requirement constitute a prohibition against the exclusion in the State Farm policy. I find no such prohibition in the statutory provisions relied upon by Burton.

Nothing in the offering requirement (AS 21.89.020(c)) suggests that the requirement is not satisfied when a carrier offers insurance against other uninsured or underinsured motorists and motor vehicles equal to or exceeding the policyholder's liability coverage, the normal scenario contemplated by

---

1. Alaska Statute 28.22.130 reads in full as follows:

The uninsured and underinsured motorists coverage provided for in this chapter does not apply to bodily injury or death or damage to or destruction of property of an insured

(1) while occupying a motor vehicle owned by, but not insured by, the named insured or the insured's spouse or relative residing in the same household; or

(2) through being struck by a vehicle owned by the named insured or the insured's spouse or relative residing in the same household.

2. The policy defined "Underinsured Motor Vehicle" as follows:

1. the ownership, maintenance or use of which is insured or bonded for bodily injury and property damage liability at the time of the accident; and

2. whose limits of liability for bodily injury and property damage liability:

a. are less than the limits of liability of this coverage;

b. have been reduced by payments to persons other than the insured, injured in the accident, to an amount less than the bodily injury limits of liability of this coverage.

the statute. State Farm offered and in fact sold Burton such coverage. There is no indication that Burton would not have been covered had he been hit by an underinsured motorist other than a motorist operating Burton's own insured vehicle.[3]

The text of the statutes do not in any way suggest that the legislature intended underinsured motor vehicle coverage to apply when the "underinsured" vehicle is that of the named insured. The statutes relied upon by Burton—the offering requirement and the definition of underinsured motorists—simply do not speak to the situation presented in this case. There is no indication that the legislature envisioned mandatory coverage in such circumstances. In short, I cannot read the definition of "underinsured motor vehicle" or the offering requirement as prohibiting the exclusion in question. Thus I would conclude that the exclusion is authorized by AS 28.-22.500.

At the time in question, AS 28.22.130(2) of the motor vehicle code supported this view.[4] Subsection (2) makes no distinction between uninsured and insured vehicles; instead, its mandate is clear that "underinsured motorists coverage ... does not apply to bodily injury or death or damage to or destruction of property of an insured ... through being struck by a vehicle owned by the named insured...." *Id.*

The court implicitly adopts Burton's argument that the "struck by" language of AS 28.22.130(2) is strictly limited to incidents where the insured is a pedestrian and is hit by a vehicle owned by him. The court states in part that "if an insured is *occupying* an insured vehicle owned by him, he is protected by his uninsured motor vehicle coverage." (Emphasis added.) Aside from the fact that Burton cites no cases or legislative history in support of this construction, this analysis contradicts Burton's own position. For Burton claims

he should recover under the underinsured motorist provisions of his policy because he was injured by an underinsured vehicle, namely, his own truck. It seems axiomatic that one can recover under an underinsured motorist policy provision only when one is injured by an underinsured vehicle. However, Burton also claims that he was not "struck by" the underinsured vehicle which injured him, so that AS 28.22.130(2), cannot preclude his recovery. In short, Burton would have this court accept that he was injured by an underinsured vehicle but was not struck by that vehicle. It seems to me that Burton cannot have it both ways.

The text of AS 28.22.130(2) is a significant indicator that the legislature did not intend that the owner of a vehicle would be able to recover, pursuant to underinsured motorist coverage, for damages caused to him by his own vehicle. In my view State Farm persuasively argues that "[e]ven if AS 28.22.130(2) were not literally applicable, [it] authorize[s] the same kind of exclusion that State Farm is seeking to enforce."

Other courts have been reticent to ascribe to state legislatures an intent to mandate recovery pursuant to an underinsured motor vehicle coverage portion of a policy when the insured vehicle is the only vehicle alleged to be underinsured. For instance, in *Meyer v. Illinois Farmers Ins. Group,* 371 N.W.2d 535 (Minn.1985), the court said:

> Liability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle from the negligent driving of the owner or another driving the vehicle. Underinsured coverage, however, is intended to protect against a different type of risk, the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance; that is, it is intended "to protect the named insured and other additional insureds from suffering an inadequately

---

**3.** If Burton had been negligently injured by an insured driver of a vehicle not owned by Burton, and that driver's insurance coverage had been reduced by payments to other parties involved in the crash to less than the limit of underinsured coverage under Burton's underinsured motorist policy, then Burton's underin-

sured motorist coverage would cover him for injuries sustained in the crash and not covered by the other party's insurance.

**4.** *See infra* n. 1 (setting forth the full text of AS 28.22.130(1) and (2)).

compensated injury caused by an accident with an inadequately insured automobile." *Myers v. State Farm Mutual Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983).

*Id.* at 537.[5]

An independent reason for sustaining the exclusion is suggested by Professor Widiss in his treatise, where he writes,

> One persuasive reason for sustaining this limitation on coverage is to preclude transforming underinsured motorists insurance into liability insurance for the operators of a vehicle covered by the applicable motor vehicle policy which includes both coverages.

A. Widiss, *Uninsured and Underinsured Motorists Insurance* (2d ed. 1990). This policy rationale for sustaining the exclusion has case support. In *Millers Casualty Insurance Company of Texas v. Briggs*, 100 Wash.2d 1, 665 P.2d 891 (1983), for instance, the court said:

> Our conclusion [that the exclusion is valid] is ... dictated by common sense and the consuming public's general understanding of coverage under these circumstances. The owner of a vehicle

purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorists coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorists coverage into liability insurance. This result would cause insurance companies to charge substantially more for underinsured motorists coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost. Further, passengers can obtain underinsured coverage from their own insurers.

*Id.* at 895.[6]

Courts have divided over the validity of the exclusion at issue here.[7] Apparently,

---

**5.** Similarly, in *Breaux v. Government Employees Ins. Co.*, 369 So.2d 1335 (La.1979) the court said:

> In our view, the intent and effect of this provision is plain.... As to coverage under the uninsured motorist provisions of a particular policy, the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the "uninsured or underinsured" motor vehicle. In addition, as to each policy containing uninsured motorist coverage, the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle.

> *Id.* at 1338.

**6.** To the same effect is *Meyer v. Illinois Farmers Ins. Group*, 371 N.W.2d 535 (Minn.1985). There the court stated:

> Here, however, the decedent passengers' heirs have already collected under the liability coverage of the insurer of the [owner's] car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an "underinsured motor vehicle" to exclude a

vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.

> *Id.* at 537. *See also* A. Widiss, *supra*, § 35.5: [A] transformation [of underinsured coverage to the equivalent of liability coverage] certainly is neither intended by insurers nor contemplated in setting the premiums for the coverage. Accordingly, the enforceability of this limitation in the underinsured motorists insurance represents one of the instances in which the coverage is sufficiently distinctive to warrant a different view of the enforceability of such a limitation. In this context, the fact that purchasers of underinsured motorists insurance have considerable latitude in regard to selecting the coverage limits is a matter of significant import.

**7.** *Compare Aitken v. State Farm Mut. Auto. Ins. Co.*, 404 So.2d 1040, 1043 (Miss.1981) (exclusion is permitted because uninsured coverage is for protection against others, not own insured vehicle) and *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 909–10 (Iowa 1972) (distinction between other uninsured motorists and one's own vehicle rejected). It may be observed that *Aitken* and *Rodman* are uninsured motorist cases. However, because the relevant Alaska

the emergent majority position is that absent a specific prohibition in the statute, exclusion of the insured motor vehicle from the definitions of uninsured and underinsured vehicles is permissible.[8]

For the reasons heretofore expressed I conclude that State Farm is not liable to Burton under the underinsured motor vehicle provisions of the policy in question.

statutes make no distinction between uninsured and underinsured motorists coverage applicable in this context, the reasoning of uninsured motorist coverage exclusion cases is applicable in the instant analysis.

**8.** *See* 2 I. Schermer, *Automobile Liability Insurance*, § 29.10[1] (2d ed.1989). The following cases have held that the exclusion is permissible: *Aitken*, 404 So.2d at 1043; *Farmers Ins. Exchange v. Warney*, 103 Nev. 216, 737 P.2d 501 (1987); *State Farm Mut. Auto. Ins. v. McClure*, 501 So.2d 141, 143 (Fla.App.1987); *Lammers v. State Farm Mutual Automobile Ins. Co.*, 48 Ala. App. 36, 261 So.2d 757 (1972); *Holt v. State Farm Mutual Automobile Ins. Co.*, 486 S.W.2d 734 (Tenn.1972). In some states, courts holding otherwise have been overruled by subsequent statutory amendments. *See, e.g., Bowsher v. State Farm Fire and Casualty Co.*, 419 P.2d 606, 607 (Or.1966) (overruled by Or.Rev.Stat. § 743.792(2)(2)(A) (1987)). In other states, California notable among them, statutes expressly exclude vehicles owned by the insured from the definition of "underinsured vehicle." *See, e.g., Lofberg v. Aetna Casualty and Surety Co.*, 264 Cal.App.2d 306, 70 Cal.Rptr. 269 (1968). Alaska's legislature has not seen fit to amend AS 28.40.100(17) to follow the California statute. *See* AS 28.40.100(a)(16).