**Leslie AYRES, Petitioner,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Respondent.**

No. S–12018.

Supreme Court of Alaska.

May 25, 2007.

Rehearing Denied June 26, 2007.

Joseph L. Paskvan, Paskvan & Ringstad, P.C., Fairbanks, for Petitioner.

Daniel T. Quinn, Richmond & Quinn, Anchorage, for Respondent.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

This case presents the question of whether AS 21.89.020 requires an insurance company to obtain a written waiver from the insured before issuing a policy with uninsured/underinsured motorist (UIM) coverage that is less than the liability coverage selected by the insured. We affirm the superior court's conclusion that a written waiver is not required. Alaska Statute 21.89.020 only requires a written waiver when the insured declines all UIM coverage.

## II. FACTS AND PROCEEDINGS

The facts in this case are not disputed. Leslie Ayres was the owner of a motor vehicle insurance policy issued by United Services Automobile Association (USAA). The policy provided liability coverage that would pay a maximum of $100,000 per person in the event of an accident and UIM coverage that would pay a maximum of $50,000 per person.

In 2001 Ayres was injured in a car accident. She recovered the policy limits of the liability insurance of the driver who was at

fault. Since her damages exceeded the limits of the at-fault driver's liability coverage, Ayres made a claim under her UIM coverage with USAA.[1] USAA refused to pay Ayres more than her $50,000 UIM limit.

Ayres filed a complaint in superior court requesting a declaratory judgment that USAA must provide UIM coverage equal to her liability coverage of $100,000. At the same time Ayres filed a motion for a statement of law interpreting AS 21.89.020. Ayres argued that AS 21.89.020 requires an insurance company to obtain a written waiver from the insured if it issues a policy with UIM coverage that is less than the policy's liability coverage.[2] USAA filed an opposition to Ayres's motion and filed a cross-motion to establish that the policy was in compliance with Alaska law. USAA argued that it was only required to obtain a written waiver from the insured if the insured completely rejected UIM coverage.

Superior Court Judge Niesje J. Steinkruger denied Ayres's motion on the grounds that AS 21.89.020 did not require the insurance company to obtain a written waiver from the insured in cases in which the UIM coverage was less than the liability coverage selected by the insured but equal to or higher than the statutory minimum. The court partially denied USAA's request for a declaration that its policy was in compliance with Alaska law, finding unresolved issues of fact as to whether USAA made the statutorily required offers of UIM coverage.[3] Ayres filed a motion

for reconsideration, which the superior court denied.

Ayres petitioned this court for review, asking whether under AS 21.89.020 an insurance company must obtain a written waiver when it issues a policy where UIM coverage is less than liability coverage. We granted the petition.

## III. DISCUSSION

■■■ Issues of statutory construction are reviewed de novo.[4] In construing the meaning of a statute, we look to the language, legislative history, and purpose of the statute, interpreting statutes under a sliding-scale approach where "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[5] We strive to give effect to the legislature's intent and adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

■■■ Alaska Statute 21.89.020 is part of the Alaska Insurance Act. It sets out "required motor vehicle coverage" in Alaska.[7] The question before us in this case is whether AS 21.89.020 requires an insurance company to obtain a written waiver from the insured before issuing a policy in which the UIM coverage is less than the liability coverage. The statute as it existed at the time of Ayres's accident in 2001[8] provided in relevant part:

> (c) An insurance company offering automobile liability insurance in this state for

---

**1.** A claimant may not pursue damages under her own UIM coverage "until the limits of liability of all bodily injury and property damage ... policies that apply have been used up." AS 28.20.445(e)(1). USAA consented to Ayres's policy limits settlement with the tortfeasor.

**2.** USAA did not obtain a written waiver from Ayres.

**3.** Ayres has agreed that she will not pursue the issue of whether USAA met the statutory offer requirements.

**4.** *Cook Inlet Keeper v. State, Office of Mgmt. & Budget, Div. of Governmental Coordination,* 46 P.3d 957, 961 (Alaska 2002).

**5.** *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787–88 (Alaska 1996).

**6.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**7.** AS 21.89.020 prescribes requirements partly by referring to provisions of two other statutes, the Alaska Motor Vehicle Safety Responsibility Act and the Alaska Mandatory Automobile Insurance Act. For a description of these acts see notes 9–12 *infra* and accompanying text.

**8.** AS 21.89.020 was last amended in 2004. Ch. 172, §§ 2, 3, SLA 2004. The 2004 amendments added the following to subsection .020(c)(1): "coverage for punitive damages that might otherwise be recoverable from an uninsured or underinsured person is not required under this paragraph." *Id.* § 2.

bodily injury or death shall, initially and at each renewal, offer coverage prescribed in AS 28.20.440 [9] and 28.20.445 [10] or AS 28.22 [11] for the protection of the persons insured under the policy who are legally entitled to recover damages for bodily injury or death from owners or operators of uninsured or underinsured motor vehicles. The limit written may not be less than the limit in AS 28.20.440 or AS 28.22.101.[12] Coverage required to be offered under this section must include the following options:

(1) policy limits equal to the limits voluntarily purchased to cover the liability of the person insured for bodily injury or death;

(2) except when the coverage consists of motorcycle liability insurance, and except for a named insured required to file proof of financial responsibility under AS 28.20 or an applicant required to file proof of financial responsibility under AS 28.20, policy limits in the following amounts when these limits are greater than those offered under (1) of this subsection:

(A) $100,000 because of bodily injury to or death of one person in one accident, and, subject to the same limit for one person, $300,000 because of bodily injury to or death of two or more persons in one accident;

·  [ (B) (E) mirror (A) but contain higher dollar amounts, the highest of which is $1,000,000/$2,000,000]

(3) other policy limits at the option of the insurer.

(d) An insurance company offering automobile liability insurance in this state for injury to or destruction of property shall offer coverage prescribed in AS 28.20.440 and 28.20.445, or AS 28.22, with limits not less than those prescribed in AS 28.20.440 or AS 28.22.101, to cover the insured person's liability for injury to or destruction of property, for the protection of the persons insured under the policy who are legally entitled to recover damages for injury to or destruction of the covered motor vehicle from owners or operators of uninsured or underinsured motor vehicles.

(e) The coverage required under (c) and (d) of this section may be waived in writing by the insured in whole or in part. After selection of the limits by the insured or the exercise of the option to waive the coverage in whole or in part, the insurer is not required to notify any policy holder in any renewal, supplemental, or replacement policy, as to the availability of the coverage or optional limits, and the waived coverage may not be included in any renewal, supplemental, or replacement policy. The insured may, at any time, make a written request for additional coverage or coverage more extensive than that provided on a prior policy.

Ayres notes that subsection .020(e) requires the insured to waive in writing the "coverage required" under subsection .020(c).

9. AS 28.20 is the Motor Vehicle Safety Responsibility Act (MVSRA). AS 28.20.440 requires both UIM and liability coverage of at least $50,000 per person and $100,000 per accident for death or bodily injury and $25,000 per accident for property damage.

10. AS 28.20.445 sets out a number of requirements concerning UIM coverage under the MVSRA. Pertinent to this case is subsection (e)(3), which provides in relevant part: "[UIM] coverage ... (3) may be rejected by the insured in writing."

11. AS 28.22 is the Alaska Mandatory Automobile Insurance Act (AMAIA). We explained the function and interrelationship of the MVSRA and the AMAIA in *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 520–22 (Alaska 1998). Briefly, the MVSRA—enacted first in 1959—does not require insurance until a driver is in an accident, but the act's policy content requirements apply to all

policies written in the state. The AMAIA—enacted in 1989—mandates insurance for all drivers of vehicles driven on the "land-connected state highway system." AS 28.22.011. The two acts' policy content requirements are generally parallel, but where one requires more extensive coverage than the other it governs. *Simmons*, 953 P.2d at 522. AS 28.22.201(a)(3), the subsection of the AMAIA parallel to AS 28.20.445(e)(3), governing requirements concerning UIM coverage, provides that UIM "coverage required under this chapter may be rejected by the insured in writing."

12. AS 28.22.101 sets out general coverage requirements and prescribes minimum UIM and liability policy limits of $50,000 per person and $100,000 per accident for death or bodily injury and $25,000 per accident for property damage.

She argues that this refers to coverage required to be offered under the "mirror image" provision of subsection .020(c)(1). She contends that in this case subsection .020(c)(1) required the offer of UIM coverage of $100,000 per person (equal to the limits of the liability coverage Ayres selected), and that USAA could not write UIM coverage for the amount she selected, $50,000 per person, without first obtaining from her a written waiver of UIM coverage of $100,000 per person.

We disagree that a written waiver of $100,000 per person UIM limits was required. Alaska Statute 21.89.020 indicates that an insurance company must *offer* the different levels of UIM coverage specified in subsections .020(c)(1)-(2) but may not *write* a policy for less than the minimum amount specified in AS 28.20.440 and AS 28.22.101. Subsection .020(c)(1) reflects one of several options for the "coverage required to be offered." Subsection (e) requires written waiver of "the coverage *required* under (c)" but not of each option of the "[c]overage *required to be offered*."[13] UIM coverage in the amount of liability coverage actually written for an insured is required to be *offered*, but it is not required to be *written*. Subsection .020(e) concerning required coverage does not refer to .020(c)(1), since the latter refers to one level of coverage that must be offered, not the minimum level of coverage that must be written.

The written waiver requirement in subsection .020(e) applies to subsection .020(c)'s mandatory floor: "The limit written may not be less than the limit in AS 28.20.440 or AS 28.22.101." Under AS 28.20.440(b)(3) the minimum UIM coverage required is equal to the minimum liability insurance required by AS 28.20.440(b)(2): $50,000 per person and $100,000 per accident.[14] Alaska Statute 21.89.020(e) therefore requires that insurance companies obtain a written waiver from insureds who wish to decline all coverage, including this minimum level. Subsection (e) applies, in other words, to insureds who want no UIM coverage at any permissible level.

Provisions of the MVSRA and the AMAIA relating to the written rejection of UIM coverage support this interpretation. As already noted, AS 28.20.445(e)(3) and AS 28.22.201(a)(3) each provide that UIM coverage "may be rejected by the insured in writing." The AMAIA is more specific than the MVSRA as to what coverage is being referred to since it adds after the word "coverage" the phrase "required under this chapter."[15] But the same meaning is implicit in the word "coverage" as used in section 28.20.445(e)(3) of the MVSRA. In both acts the coverage required is $50,000 per person and $100,000 per accident. If insureds wish to reject this coverage, they must do so in writing.

In our two most recent cases concerning the meaning of AS 21.89.020(c) and (e) we also expressed the view that (e) calls for a written waiver of UIM coverage only when UIM coverage is completely waived.

In *Peter v. Schumacher Enterprises, Inc.* the insured had purchased liability and UIM coverages with identical $50,000/$100,000 limits.[16] She contended that she was not advised that higher UIM limits were available and that she would have purchased higher limits if she had known she could.[17] She also argued that any offers of higher limits had to be in writing.[18] We rejected Peter's contention that offers had to be in writing, but found that there were genuine issues of material fact as to whether she was advised that she could purchase higher limits.[19] We described the operation of the statute in an introductory statement as follows:

> Alaska Statute 21.89.020(c) requires insurance companies to offer in automobile liability policies UM/UIM coverage *with*

---

**13.** AS 21.89.020(c)(1) (emphasis added).

**14.** AS 28.22.101 sets out the same requirements—minimum liability insurance of $50,000/$100,000, with minimum UIM coverage at the same level.

**15.** AS 28.22.201(a).

**16.** 22 P.3d 481, 491 (Alaska 2001).

**17.** *Id.* at 487.

**18.** *Id.* at 491.

**19.** *Id.*

*minimum limits of $50,000 per person and $100,000 per accident.* In addition, subsection (c)(2) requires that optional higher limits be offered up to $1,000,000/$2,000,000. Subsection (d) requires insurance companies to offer minimum limits of $25,000 for UM/UIM property damage coverage. Subsection (e) provides that "[t]he coverage required under (c) and (d) . . . may be waived in writing by the insured in whole or in part." [20]

Later in the opinion we stated that the "coverage required" language of subsection (e) referred to minimum limits prescribed in subsection (c) not to optional limits:

> The text of subsection (e) makes a distinction between "coverage required" and "optional limits." "Coverage required" must be waived in writing, but "optional limits" in the second sentence of (e) is a subject separate from required coverage. The "coverage required" by subsections (c) and (d) is UM/UIM for bodily injury and UM/UIM for property damage. This coverage must be purchased unless the buyer waives it in writing. *If the coverage is not waived in writing, it must be for the minimum limits prescribed in subsection .020(c)* and (d). The higher limits that must be offered under subsection .020(c)(2)(A)-(E) need not be accepted. They are thus optional rather than required.[21]

It bears repeating that the "minimum limits prescribed in subsection (c)" referred to in this statement are the minimum limits described in the earlier introductory statement, "$50,000 per person and $100,000 per accident."

In *GEICO v. Graham–Gonzalez* we also indicated that a written waiver as called for by subsection (e) is only required when no UIM coverage is selected.[22] We stated with reference to the second sentence of subsection (e) that it "exempts insurers from the offer requirement of (c) on policy renewals *once the insured has* either *waived UIM coverage altogether* or selected a level of coverage." [23] We also explained that the purpose of .020(c) is to "give insureds various options with respect to UIM coverage: to select coverage with limits mirroring their liability limits, or with different limits, *or to waive coverage altogether.*" [24]

Ayres argues that other cases establish that a written waiver is necessary before a policy can be written with UIM limits less than liability limits. She relies on several cases in which this court has found an insurance company's offer to be deficient under AS 21.89.020(c). In *Burton v. State Farm Fire & Casualty Co.* we invalidated under the mirror-image-offer clause a provision in the insurance policy that specifically excluded a vehicle insured under the liability policy from the definition of an underinsured motor vehicle.[25] In *State Farm Mutual Automo-*

---

20. *Id.* at 484 (emphasis added).

21. *Id.* at 492 (emphasis added). Although we referred to the higher optional limits that must be offered with reference to .020(c)(2) rather than (c)(1) and (2), this was both understandable and correct in the context of *Peter.* The liability coverage purchased in *Peter* was at the minimum permissible level, and thus the UIM limits required to be offered under (c)(1) were identical to the minimums required to be written under (c). *Id.* at 491.

22. 107 P.3d 279, 285 (Alaska 2005).

23. *Id.* (emphasis added).

24. *Id.* at 287 (emphasis added).

25. 796 P.2d 1361, 1363–64 (Alaska 1990). *Burton* involved the version of AS 21.89.020 that existed prior to the 1990 amendments. *Id.* at 1363 n. 2. In that version subsection (c) read in full as follows:

> (c) An insurance company offering automobile liability insurance in this state for bodily injury or death shall offer coverage prescribed in AS 28.20.440 and 28.20.445 or AS 28.22.010–AS 28.22.130, *with limits equal to at least the limit purchased voluntarily to cover the insured person's liability for bodily injury or death,* for the protection of the persons insured under the policy who are legally entitled to recover damages for bodily injury or death from owners or operators of uninsured or underinsured motor vehicles. The limit written may not be less than the limit in AS 28.20.440 or AS 28.22.010.

(Emphasis added.) The pre–1990 version of subsection (e) was identical to the current one. The 1990 amendment removed the highlighted text from the body of the paragraph, inserted it as (c)(1), and added the current (c)(2) and (c)(3). It also deleted the words "at least" from the highlighted text and prefaced (c)(1)-(3) with the following sentence: "Coverage required to be offered under this section must include the follow-

*bile Insurance Co. v. Harrington* we required State Farm to cover prejudgment interest and attorney's fees under its UIM policy because its liability policy covered such items and they are considered elements of "policy limits" under Alaska law.[26] In *State Farm Mutual Automobile Insurance Co. v. Lawrence* we found that since the insured person's liability insurance covered punitive damages its UIM insurance must do the same because of the mirror-image-offer requirement of AS 21.89.020(c)(1) as interpreted in *Harrington.*[27]

In these cases, once we found the offers to be noncompliant because they invalidly excluded elements of policy limits liability coverage[28] and provided "less [UIM] coverage than ... required"[29] by statute, we had to decide on a remedy. The remedy we selected was to reform the policies in question so that the coverage they contained complied with applicable statutory requirements and the mirror-image-offer rule of AS 21.89.020(c)(1).

These cases are distinguishable from the present case. Each of them involved noncompliance with the offer requirement of AS 21.89.020(c)(1) or its predecessor. In this case, by contrast, no contention is made that USAA's offer did not comply with the statute.

Ayres also notes that in *Lawrence*, quoting *Harrington*, we stated

> that "the evident purpose of section .020(c)(1) is to provide for the insured, as an injured claimant, the same benefit level as that provided by the insured to those asserting claims against the insured." Therefore, automobile insurance companies must offer insureds UM/UIM coverage that mirrors the insureds' liability coverage.[30]

We do not retreat from that statement, given that it is clear that what must be provided to insureds is an opportunity to obtain UIM coverage that is the equal of liability coverage. A more complete explanation of the purposes of .020(c) as a whole is set out in *GEICO v. Graham–Gonzalez.*[31] There we

---

ing options." Ch. 78, § 4, SLA 1990. The statute numbers referred to in the text were also updated in the 1990 version, but they refer to the same statutes.

The pre–1990 version of the statute was similar to the current one, in that the insurance companies were required to write UIM coverage equal to the statutory minimum of liability coverage and to offer coverage equal to the liability coverage voluntarily selected by the insured. The effect of the 1990 amendment was to increase the number and content of the UIM offers an insurance company had to make. Since the new subsection (c)(2) required insurance companies to make additional offers above the level of liability insurance voluntarily chosen and the new subsection (c)(3) indicated that they could make other offers as well, it was no longer necessary to include "at least" in the language of new subsection (c)(1).

**26.** 918 P.2d 1022, 1025–26 (Alaska 1996). *Holderness v. State Farm Fire & Casualty Co.,* 24 P.3d 1235, 1237 (Alaska 2001), extended this holding to UIM coverage contained in an umbrella policy. In *Holderness* State Farm maintained that the umbrella policy was not an "automobile liability policy" as defined by AS 21.89.020. *Id.* at 1239. The liability portion of the umbrella policy covered attorney's fees and prejudgment interest, but State Farm refused to pay them in connection with its UIM payments to Holderness. *Id.* Because we found that the umbrella policy was an automobile policy within the meaning of

AS 21.89.020, the UIM coverage in the policy was reformed "under *Harrington* to provide equal liability and underinsured motorist coverage as prescribed by AS 21.89.020(c)," and State Farm was required to pay attorney's fees and prejudgment interest. *Id.* at 1241. In 2004 the legislature amended the statute to add AS 21.890.020(i), which states that umbrella coverage is not considered automobile insurance for purposes of that section. Ch. 172, § 3, SLA 2004.

**27.** 26 P.3d 1074, 1079–80 (Alaska 2001). In 2004 the legislature amended AS 21.89.020(c)(1) to clarify that it did not require "coverage for punitive damages that might otherwise be recoverable from an uninsured or underinsured person." Ch. 172, § 2, SLA 2004.

**28.** In *Burton, Harrington,* and *Holderness* the insureds purchased UIM coverage with the same limit as their liability coverage. *Holderness,* 24 P.3d at 1237–38; *Harrington,* 918 P.2d at 1023; *Burton,* 796 P.2d at 1362. *Lawrence* does not indicate at any point that the liability limits were higher than the UIM limits.

**29.** *Burton,* 796 P.2d at 1362–63.

**30.** *Lawrence,* 26 P.3d at 1079–80 (quoting *Harrington,* 918 P.2d at 1026).

**31.** 107 P.3d 279 (Alaska 2005).

noted that "[t]he purpose of .020(c) is to give insureds various options with respect to UIM coverage: to select coverage with limits mirroring their liability limits, or with different limits, or to waive coverage altogether."[32] Permitting an insurance company to issue a policy like Ayres's without a written waiver is consistent with these purposes.

Our interpretation of the statute is supported by policy as well. Ayres argues that "it makes no sense for an insured to purchase liability coverage for more than the statutory minimum to protect others, and ... not protect himself or herself in an amount at least equal to the amount of the liability coverage voluntarily purchased." However, the reasons for selecting a given amount of liability insurance differ from the reasons for selecting a given amount of UIM insurance. Individuals purchase auto liability insurance above the mandatory minimum to protect their assets in the event that they are to blame for an expensive accident. Individuals purchase UIM insurance to protect themselves if they are the victims of an expensive accident. While auto liability insurance generally does not overlap with other forms of insurance, UIM coverage might overlap with medical, disability, life, or other forms of first-party insurance available to the purchaser. When this is the case, an insured might reasonably wish to purchase a lower level of UIM coverage than liability coverage.

## IV. CONCLUSION

For these reasons we AFFIRM the superior court's ruling that AS 21.89.020 does not require a written waiver when an insured person selects UIM coverage with limits below the liability coverage voluntarily selected, so long as the UIM limits meet the statutory minimums set out in AS 28.20.440 and AS 28.22.101.

CARPENETI, Justice, not participating.

**32.** *Id.* at 287.